TRAVELERS' INS. CO. v. TOWNSHIP OF OSWEGO.

(Circuit Court of Appeals, Eighth Circuit. December 4, 1893.)

No. 334.

1. CONSTITUTIONAL LAW—SPECIAL LEGISLATION—TOWNSHIPS.
    The provision of the constitution of Kansas, that "in all cases where a general law can be made applicable no special law shall be enacted," (article 2, § 17,) does not invalidate a subsequent special law authorizing a township to refund and scale down its indebtedness. State v. Hitchcock, 1 Kan. 178, applied. 55 Fed. 361, reversed.

2. SAME—CORPORATIONS—TOWNSHIP.
    The provision of the constitution of Kansas that the legislature shall pass no special act conferring corporate powers (article 12, § 1) does not apply to quasi corporations, such as townships. Beach v. Leahy, 11 Kan. 28, followed.

3. STATUTES—TITLES OF ACTS—PROVISIONS GERMANE TO SUBJECT.
    Under a constitutional provision that "no bill shall contain more than one subject, which shall be clearly expressed in its title," (Const. Kan. art. 2, § 16,) an act whose subject, so expressed, is the refunding of the indebtedness of a certain township, may contain provisions fixing the terms on which such indebtedness shall be refunded, naming persons authorized to refund it, authorizing the issuance of new bonds and coupons, and the levy of taxes to pay them, and enforcing the performance of the duties devolved upon the several agents selected, as such provisions are germane to the subject, naturally suggested by the title, and proper to the accomplishment of the purpose it discloses.

4. SAME—APPOINTMENT OF OFFICERS.
    A constitutional provision that "all officers, whose election or appointment is not otherwise provided for, shall be chosen or appointed as may

be prescribed by law," (Const. Kan. art. 15, § 1,) gives to the legislature itself authority to make such appointments.

5. SAME—TOWNSHIP OFFICERS—WHO ARE.
    Commissioners appointed by a special act to refund the bonded indebtedness of a township at not more than 30 per cent. of its face, and invest the sinking fund to be raised to pay the same, are mere financial agents, and not officers of the township, within the meaning of a constitutional provision for the election of such officers, nor are they charged with any judicial functions.

6. SAME—LEGISLATIVE POWERS—TOWNSHIPS.
    The right to determine whether a township shall scale down its bonded indebtedness, and issue new bonds for the remainder, lies with the legislature, under the constitution of Kansas, and not with the people of the township.

7. SAME—TOWNSHIPS—REFUNDING DEBT.
    The special acts of the Kansas legislature authorizing Oswego township, Labette county, to scale down and refund its bonded indebtedness, (Laws 1881, c. 170; Laws 1883, c. 157,) do not contravene any provisions of the state constitution, and are valid. 55 Fed. 361, reversed.

In Error to the Circuit Court of the United States for the District of Kansas.

At Law. Action by the Travelers' Insurance Company against the township of Oswego, Labette county, Kan., on interest coupons of bonds issued by defendant. Demurrer to the complaint sustained. 55 Fed. 361. Plaintiff brings error. Reversed.

Statement by SANBORN, Circuit Judge:

The Travelers' Insurance Company, the plaintiff in error, brought an action in the court below to recover upon certain interest coupons that had been detached from certain bonds issued by the township of Oswego, the defendant in error, to refund its bonded indebtedness. The complaint alleged that these bonds and coupons were issued in 1885 under the authority of an act of the legislature of the state of Kansas, entitled "An act to enable the township of Oswego, in the county of Labette, state of Kansas, to refund its indebtedness," approved March 3, 1881, (Sess. Laws Kan. 1881, c. 170,) and an amendatory act passed in 1883, (Sess. Laws Kan. 1883, c. 157;) that these bonds had been duly registered under these acts; that the plaintiff was an innocent purchaser for value, before maturity, of these bonds and coupons, which were payable to bearer; and that the coupons were overdue. A demurrer to this complaint was sustained, and the action dismissed, on the ground that the acts of the legislature under which the bonds were issued were unconstitutional.

The act of March 3, 1881, as amended, provided substantially as follows:

Section 1. That the township of Oswego was authorized to issue funding bonds to fund and cancel its existing bonded indebtedness.

Sec. 2. That the bonds to be issued should bear 6 per cent. interest, and that the principal and interest should be payable at a certain place and at certain times, respectively.

Sec. 3. That the county clerk of Labette county, Kan., should register the bonds, and that no bond should be of any validity unless registered.

Sec. 4. That no bond should be signed by the commissioners until the bonds in payment of which it was to be issued had been delivered to the county clerk to be canceled, and that the clerk should cancel and destroy the latter.

Sec. 5. That the bonds issued under the act should be registered in the office of the auditor of state, and that he should certify to the board of county commissioners, the county treasurer, and the county clerk of Labette county the amount necessary to be levied in each year to pay the coupons, and to create a sinking fund.

Sec. 6. That "it shall be the duty of the board of county commissioners of Labette county, Kansas, annually and at the time it makes the general levy for state, county and other taxes to levy on all taxable property in

Oswego township a sum sufficient as shown by the said certificate of the auditor of state to pay the interest on said bonds adding not to exceed 10 per cent. for delinquencies provided that such levy shall be made on all such property as would under existing laws be holden for the payment of the bonds or judgments thereon that may be funded, taken up, satisfied or paid under and by virtue of the provisions of this act;" that in the eleventh year after the issuance of the bonds, and annually thereafter, the county commissioners shall levy a tax to create a sinking fund to pay the bonds; that the commissioners provided for in the act shall invest it; and that, if any of the county commissioners fail to vote for the levy of such a tax, they and their sureties shall be liable in a civil action to the owners of the coupons for the full amount that should have been, but was not, levied.

Sec. 7. That if the county commissioners fail to levy this tax in any year the county clerk shall add the proper amount to that levied by the commissioners, and distribute it ratably on all the taxable property of Oswego township; and, if he fails to do so, he and his sureties shall be liable in a civil action, to the owners of the coupons that should have been levied for, to the full amount thereof.

Sec. 8. That if, when the tax roll of Oswego township comes to the county treasurer, the tax provided for in the act has not been levied, or placed on the tax roll, he shall place it there, and shall collect it; and, if he fails to do so, he and his sureties shall be liable in a civil action, to the owners of the coupons that should have been paid from such levy, to the full amount thereof.

Sec. 9. "That for the purpose of compromising the bonded indebtedness and the judgments thereon of the said township of Oswego, and for the issuing of the bonds and coupons provided for by this act C. M. Condon, J. B. Draper and Thomas Shrout of the county of Labette are made and declared the commissioners and the agents of said township of Oswego;" that bonds issued under the act shall be signed by their chairman and attested by their clerk, "and in the compromising and funding of the said indebtedness of said township the said commissioners shall have full power to do all things needful; provided that no portion of said indebtedness shall be compromised by said commissioners at a higher rate than thirty cents on the dollar;" and that, for any violation of the provisions of the act by either of the commissioners, he shall be deemed guilty of a felony.

Sec. 10. That if any one of the commissioners fails to accept the position tendered him, or if, after accepting, he dies or resigns, the judge of the judicial district in which Labette county is situated shall fill the vacancy, and that the commissioners shall give bonds for the faithful discharge of their duties.

When this act was passed there was a general law in force in the state of Kansas, authorizing every county and township in that state, after a favorable vote of its electors, to compromise and refund its indebtedness, and to issue new bonds therefor, not exceeding its actual outstanding indebtedness in amount.

W. H. Rossington and Charles Blood Smith, (E. J. Dallas, on the brief,) for plaintiff in error.

W. F. Rightmire and F. H. Atchinson, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The only question in this case is the constitutionality of the act of the legislature of Kansas under which these bonds and coupons were issued. Before entering upon the discussion of this question, it is well to note the purpose and extent of the authority vested in the commissioners appointed by the act to issue these bonds. They were not empowered to contract for the purchase of any property, or for the performance of any work, on behalf of the township. They were not authorized to incur any new debt, or to increase any

old indebtedness of the township.    The act did not provide for the payment of any salaries or compensation to these agents, even.    It did not enable them to add one dollar to the burden of taxation which rested on the property of the township.    Laying aside the authority to invest the sinking fund 12 years after the bonds were issued, which is immaterial here, the entire power given to these commissioners was to act as a board of auditiors, to receive, calculate the amount due upon, and destroy, the old bonds of the township as fast as their owners would consent to cancel and surrender them for new bonds to be issued by the commissioners for only 30 per cent. of the amount justly due.    In effect, the act empowered the commissioners to reduce the bonded debt of this township 70 per cent., and to certify that the remaining 30 per cent. of its debt, and no more, was still owing, with certain interest, and this is the sum and substance of its offending.    We turn to the consideration of the objections to its validity.

The principal objection, and the one that was sustained by the court below, is that the passage of this act was a violation of section 17, art. 2, of the constitution of Kansas, which provides that:

"All laws of a general nature shall have a uniform operation throughout the state, and in all cases where a general law can be made applicable no special law shall be enacted."

This refunding act is, without question, a special law, and it is contended that it is void because a general law could have been made applicable to the case of this township, and also because it prevents the uniform operation throughout the state of the general laws for the refunding of debts; of the general laws fixing the number and names of township officers, and defining their duties, of the general law providing for the filling of vacancies in township offices; and of the laws establishing the courts, and prescribing their jurisdiction.    We are spared the labor of examining this question.    It was settled by the supreme court of Kansas, by a long line of unvarying decisions, before these bonds were issued.    No provision of the national constitution, or of the national laws or treaties, is in question.    In determining rights dependent entirely upon the interpretation of the constitution and laws of a state, the national courts uniformly follow the rules of construction and interpretation announced by the highest judicial tribunal of that state where such rules were established before the rights in question accrued.    Dempsey v. Township of Oswego, 4 U. S. App. 416, 2 C. C. A. 110, 51 Fed. 97; Rugan v. Sabin, 10 U. S. App. 519, 3 C. C. A. 578, 53 Fed. 415, 416; Norton v. Shelby Co., 118 U. S. 425, 439, 6 Sup. Ct. 1121; Bolles v. Brimfield, 120 U. S. 759, 763, 7 Sup. Ct. 736.

In State v. Hitchcock, (decided in 1862,) 1 Kan. 178, the highest judicial tribunal of that state held that a special law locating the county seat of Franklin county was constitutional and valid, notwithstanding the fact that it prevented the operation in that county of a general law of that state then in existence, providing for the location of county seats.    Chief Justice Ewing, in delivering the opinion of the court, said:

"The legislature must necessarily determine whether their purpose can or cannot be expediently accomplished by a general law. Their discretion and sense of duty are the chief, if not the only, securities of the public for an intelligent compliance with that provision of the constitution. Whether we could, in any conceivable case presenting a flagrant abuse of that discretion, hold a private law invalid, as contrary to that provision of the constitution, we need not decide; but we would certainly not hold such a law invalid merely because it would, in our opinion, have been possible to frame a general law under which the same purpose could have been accomplished."

The rule thus announced in the first volume of the Kansas Reports has been affirmed and adhered to in that state ever since. It is true that in Darling v. Rodgers, 7 Kan. 592, and Robinson v. Perry, 17 Kan. 248, general laws which applied to certain counties, only, were held void because they did not have a uniform operation throughout the state; but the act in question here is not a general law, and no special law of the character here presented has ever been held invalid in that state, so far as we are aware, either because it prevented the uniform operation of a prior general law, or because a general law might have been made applicable to its subject-matter. On the other hand, every such special law that has been presented to the supreme court of that state has been sustained. In 1873, in Beach v. Leahy, 11 Kan. 28, a special law authorizing a school district to issue bonds to build a schoolhouse was sustained, although there was a general law in force, the operation of which in that district must have been prevented by the special act. Mr. Justice Brewer, then a judge of the supreme court of Kansas, in delivering the opinion of the court, said:

"It may be conceded that this is a special law; that it authorizes the issue of bonds in a manner and upon conditions different from those prescribed by the general statute therefor. It is evident, also, that the result could be accomplished by a general law, or, in the words of the constitution, that a general law could be made applicable, for a general law is on the statute book under which great numbers of school districts have issued bonds. Why this distinction was made, we do not know, and there is nothing in the record to enlighten us thereon. We may imagine many reasons, but it is useless to speculate. It is enough, in the absence of any showing as to the facts, that we can see that there may have been good and sufficient reasons."

In Commissioners v. Shoemaker, (decided in 1882,) 27 Kan. 77, a special act had been passed, excepting the county clerks and county treasurers of two counties from the operation of a general law then in force, fixing the salaries of county officers throughout the state, and it was sustained. In Washburn v. Commissioners, (decided in 1887,) 37 Kan. 217, 221, 15 Pac. 237, while there was a general law in force authorizing the county commissioners of any county in the state to build a jail and jailer's residence after a vote of the electors of the county approving the project, a special law had been passed, authorizing the county commissioners of Shawnee county to build a jail and jailer's residence, to levy a tax of six mills upon the taxable property of the county, and to issue scrip to pay for the buildings, without submitting the project to a vote of the electors, and this law was sustained by the supreme court of Kansas. In State v. Sanders, (decided in 1889,) 42 Kan. 228, 233, 21 Pac. 1073,

that court, in answer to the suggestion that the special law then before it prevented the uniform operation of a prior general law, and that there was a general law applicable to its subject-matter, cited the authorities to which we have referred, and declared that:

"The interpretation which was placed upon this provision of the constitution at an early day, and which has been accepted and acted upon by both the legislature and the courts since that time, must be regarded as settled, and binding upon the court, whatever the views of the present members might be."

See, also, City of Wichita v. Burleigh, 36 Kan. 34, 12 Pac. 332; Elevator Co. v. Stewart, 50 Kan. 378, 32 Pac. 33.

In view of this long-established and uniform interpretation by the highest judicial tribunal of Kansas of the provision contained in section 17, art. 2, of the constitution of that state, the objection to this law founded upon that provision ought not to be, and cannot be, sustained by the federal courts. The interpretation given by the state court must be followed, in the interest of a wise public policy, of uniformity of decision and harmony of action between the two systems of jurisprudence, and of stability and certainty in the rights of citizens. It would be intolerable that these bonds, issued and sold upon the faith of this uniform interpretation of the constitution by both the legislature and the courts of Kansas for 23 years before their issuance, should be held valid and enforced in the state courts, and should be declared void in the federal courts, when no impingement upon the federal constitution, laws, or treaties, and no question of commercial or general law, demands an independent examination and determination of this question by the latter.

The second objection interposed to this act is that it was passed in violation of section 1, art. 12, of the constitution of Kansas, which provides that:

"The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws; but all such laws may be amended or repealed."

This provision is found in the article of the constitution entitled "Corporations," and most of the provisions of that article relate to private corporations. Section 5 of the article, however, provides that:

"Provision shall be made by general law for the organization of cities, towns and villages; and their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit shall be so restricted as to prevent the abuse of such power."

The perusal of these sections at once suggests the thought that the restriction of section 1 relates to corporations proper, only,— to private corporations, and cities, towns, and villages,—and that it in no way restricts or affects the legislative authority over counties, townships, and school districts. We are also relieved from a consideration of this question. The supreme court of Kansas decided it in 1873, and has constantly adhered to that decision. In Beach v. Leahy, 11 Kan. 28, 31, in which a special law was under consideration which conferred upon a school district authority to build a schoolhouse, and to issue bonds to pay for it, on terms different from those of a general law then in force, giving such authority,

this question was presented and determined.    Mr. Justice Brewer, who delivered the opinion of the court, in speaking of the effect of section 5, said:

"On the other hand, in order that there might be no question whether this article was intended for other than private corporations, section 5 names certain public corporations to which its provisions extend.    It was probably well that these were named, to avoid question, for all the sections other than the fifth have reference—principally, at least—to private corporations.    Yet, as these are corporations proper, there would be weighty reasons for holding them included, even though not in terms named.    But with reference to counties, townships, and school districts the case is different.    True, they are called in the statute 'bodies corporate.'  Gen. St. p. 253, § 1;  Id. p. 1082, § 1; Id. p. 920, § 24.    Yet they are denominated in the books, and known to the law, as 'quasi corporations,' rather than as corporations proper.    They possess some corporate functions and attributes, but they are primarily political subdivisions,—agencies in the administration of civil government,—and their corporate functions are granted to enable them more readily to perform their public duties."

After an exhaustive examination of the authorities, he says:

"The conclusion to which these investigations have led us is that, among public corporations, only corporations proper are included within the scope of article 12 of the state constitution, and that a school district is only a quasi corporation, and not covered by its provisions."

This decision has been uniformly followed by the supreme court of Kansas, and it is decisive of this objection in this court.    State v. County of Pawnee, 12 Kan. 426, 439;  Commissioners v. O'Sullivan, 17 Kan. 58, 61;  Eikenberry v. Township of Bazaar, 22 Kan. 556;  Marion Co. v. Riggs, 24 Kan. 255, 258.    In the two cases last cited, it is held that counties, townships, school districts, and road districts are not liable for neglect of public duty;  that they exist only for the purposes of the general political government of the state;  that all the powers with which they are intrusted are the powers of the state, and all the duties with which they are charged are the duties of the state;  that in the performance of governmental duties the sovereign power is not amenable to individuals;  and, therefore, that these organizations are not liable for such neglect, in the absence of a statute imposing such a liability.

The third objection to the constitutionality of this law is that its passage was in violation of section 16, art. 2, of the constitution of Kansas, which provides that:

"No bill shall contain more than one subject, which shall be clearly expressed in its title."

The title of this act is, "An act to enable the township of Oswego, county of Labette, to compromise and refund its present indebtedness."    The provision here cited is common to the constitutions of many states, and it has frequently been the subject of judicial construction.    The settled rule for its interpretation is that, where the subject of the bill is clearly stated in the title, the law will not be held obnoxious to this clause of the constitution on account of the presence in it of any provisions that are germane to the subject expressed in the title, or that would be naturally suggested by it as necessary or proper to the complete accomplishment of the purpose

it discloses. State v. Barrett, 27 Kan. 213, 218, and cases cited; State v. Cassidy, 22 Minn. 312, 322, 326, and cases cited.

The act before us is fully protected by this rule. Its subject was the refunding of the indebtedness of Oswego township, and the provisions fixing the terms on which its indebtedness should be refunded, naming the persons authorized to refund it, authorizing the issuance of new bonds and coupons, and providing for the levy of taxes to pay them, and enforcing by proper provisions the performance of the duties devolved upon the several agents selected, were all germane to this subject, naturally suggested by the title, and proper, if not necessary, to the accomplishment of the purpose that title disclosed. The object of the constitutional provision is to secure separate consideration of each subject by the legislature, and to this end this provision has been held to make void legislation on subjects foreign to that expressed in the title to a bill. But there is no subject mentioned in this act that is foreign to that expressed in its title, and it does not come within the terms or the purpose of the constitutional inhibition.

We have now considered all the provisions of the constitution of Kansas that it is claimed expressly prohibited the passage of this law. It is, however, argued that the act is void (1) because the appointment of the commissioners was an executive, and not a legislative, function; (2) because it is claimed that the commissioners were township officers, and that the constitution provides for the election of such officers; (3) because these commissioners were to determine the amount of the indebtedness of the township, and that is claimed to be a judicial function; and (4) because the enactment of this special law was not within the scope of legislative authority, and was a usurpation of the power of local self-government that is claimed to have been reserved to the electors of this township by the provision of section 20 of the bill of rights of the constitution of Kansas which declares that "all powers not herein delegated remain with the people."

The decisions of the supreme court of Kansas to which we have already adverted, and which must control this case, render extended notice of these objections unnecessary. There is nothing in the constitution of Kansas which declares the appointment of agents of the state, whose positions are created and duties prescribed by the legislature, to be an executive, rather than a legislative, power. Primarily, the appointment of such agents pertains no more to the functions of the executive than to that of the legislative department of the government, and it was competent for the people of the state to vest it in either the one or the other. Section 1, art. 15, of the Kansas constitution, provides that:

"All officers, whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by law."

The right to prescribe the method of appointment thus vested in the legislature necessarily carried with it the right to authorize that appointment to be made by the legislature itself. Moreover, these commissioners were named in the body of the act in question.

The governor—the chief executive officer of the state—had the veto power, under the constitution of the state, and he approved this law. They were therefore appointed by the exercise of both the legislative and the executive power of the state. These commissioners were not township officers, within the meaning of the constitution of Kansas, and hence they were not elective. They had no duties to discharge in the general management of the business of the township, or in the management of any general department of that business. They were mere fiscal agents, charged with the simple duties of refunding the bonded indebtedness of the township at not more than 30 per cent. of its face, and investing the sinking fund to be raised to pay the bonds. A banker who is appointed to pay the bonds of a town or city, or to exchange new bonds or notes for old ones, is not an officer of the town or of the city. He is a mere financial agent. And these commissioners took no higher rank. Nor were their duties judicial. The indebtedness of this township was evidenced by its bonds. The duty of the commissioners in determining their amount was of the same character as that of the banker, who determines before payment the amount of the bonds of a city which he has been directed to pay when presented at his counter. This was not the discharge of a judicial function.

But a single question remains: Was the right to determine whether or not this township would reduce its indebtedness 70 per cent., and issue new bonds for the remaining 30 per cent., and, if so, the right to determine the manner of issuing them, reserved by the constitution of Kansas to the people of this township, or was it vested in the legislature of Kansas? Undoubtedly, the legislative power of that state is not omnipotent. It is limited by the federal constitution, laws, and treaties; by the express restrictions of the constitution of the state; by the implied restrictions evidenced by certain provisions of that instrument, such as the grant of executive and judicial power to other departments of the government, which necessarily prohibits the exercise of executive and judicial functions by the legislature; and by its nature and purpose. A flagrant and outrageous abuse of its power, such as the attempted passage of an act authorizing the destruction of the life or property of the citizen without cause, or an act authorizing the commission of those very offenses against which it is the great purpose of every good government to protect its people, could not be sustained as a valid exercise of legislative power, even in the absence of any express prohibition in the constitution. There is, however, nothing of this character in the law we are considering; and, subject to the limitations we have suggested, the legislative power of a state is supreme, within the scope of its authority. The power to levy taxes upon any of the property in the state, to build schoolhouses, roads, courthouses, jails, and to make other public improvements at the expense of the people; the power to borrow money, to incur indebtedness, to make contracts, to issue bonds on behalf of the people of the state, or on behalf of any political subdivision of the state,—all these are essential legislative powers, and

depend for their exercise upon the will of the representatives of the people assembled in the legislature. If these and like powers are exercised in various political subdivisions of the state by school districts, road districts, townships, counties, villages, and cities, the latter are but the agents and instrumentalities of the legislature for the more convenient administration of the local government of the people within its jurisdiction. All the governmental powers and privileges these instrumentalities enjoy are derived from the legislature through the general or special laws that recognize their existence and limit their powers. It goes without saying that the power which established these agencies can destroy them, can revoke the whole or a part of the powers it delegated to them, and can delegate these powers, or any portion of them, to other agents, unless restrained by some of the limitations we have referred to. Meriwether v. Garrett, 102 U. S. 472, 511; U. S. v. Baltimore & O. R. Co., 17 Wall. 322, 329; State v. Hunter, 38 Kan. 578, 582, 17 Pac. 177; Philadelphia v. Fox, 64 Pa. St. 169, 180; People v. Draper, 15 N. Y. 533, 545; Mayor, etc., of Baltimore v. State, 15 Md. 376; People v. Langdon, 8 Cal. 1, 16; Ohio v. Covington, 29 Ohio St. 102; Jensen v. Board, 47 Wis. 298, 309, 310, 2 N. W. 320; Daley v. City of St. Paul, 7 Minn. 390, (Gil. 311;) Bridges v. Shallcross, 6 W. Va. 562; Biggs v. McBride, (Or.) 21 Pac. 878, 881; People v. Freeman, (Cal.) 22 Pac. 173; State v. George, (Or.) 29 Pac. 356; President, etc., of Revenue v. State, 45 Ala. 399.

Without a delegation of the legislative power of the state, the township of Oswego had no authority to issue the original bonds, or to refund them by the issuance of new bonds. In all that that township did or could do in this regard, it was but the instrumentality or agency through which the legislature was exercising its power of administering the local government of the township. It was in the discretion of the legislature to determine by what agents it would exercise that power. It might have delegated the power to audit and destroy the old bonds, and to issue the new ones, to the trustee or to the clerk of the township, but it had the like right and the same power, in its discretion, to delegate the performance of this duty to the commissioners named in the act; and it is not the province of the courts to review or restrict the exercise of that discretion, in a case clearly within the scope of legislative authority.

The judgment below is reversed, with costs, and the cause remanded, with directions for further proceedings in accordance with law.