### CITY OF OMAHA et al. v. UNION PAC. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1896.)

#### No. 443.

CONSTITUTIONAL LAW — STATING PURPOSE OF STATUTE IN TITLE — NEBRASKA CONSTITUTION.

By an act, passed in 1879, the legislature of Nebraska enacted a general system of assessment and taxation of property, which provided, among other things, that the roadbed, right of way, tracks, depot grounds, and buildings and rolling stock of any railroad company should be returned by its officers to the auditor of public accounts, assessed by the state board of equalization, and certified to the clerks of the several counties through which the road ran in proportion to the number of miles in such counties, respectively. By section 79 of an act passed in 1887, incorporating metropolitan cities, and defining their powers, the legislature gave power to such cities to assess certain buildings within the right of way or along the track of any railroad company, used for purposes of rent by such company, or for purposes other than the ordinary operations of such company, and not appearing on the county rolls because not returned to the state officers with the railroad property as such. In 1891 an act was passed, entitled "An act to amend sections 11 * * * 79 * * *" of the act of 1887, "and to repeal said sections so amended." This act introduced into that of 1887 a provision that the right of way of any railroad in a city should include only 50 feet of land on each side of the main tracks, and that all lands and buildings outside of such 50 feet should be assessed by the city authorities. In 1893 another act was passed, entitled "An act to amend sections 1 * * * 79 * * * of" the act of 1887, "as subsequently amended, and to repeal said sections as heretofore existing." By this amendment the city authorities were authorized to list and assess the roadbed, right of way, tracks, depot buildings, and grounds and all the property of any railroad company within the city, and not appearing on the county rolls by reason of having been returned or listed to the state auditor. Held, that the acts of 1891 and 1893 violated the provision of section 11, art. 3, of the constitution of Nebraska that "no bill shall contain more than one subject and the same shall be clearly expressed in its title," since the acts contained provisions relative to a subject-matter not dealt with by the act amended, conferred new powers on the city authorities, and that of 1891 undertook to define the limits of a railroad right of way, none of such purposes being sufficiently indicated by the titles of the acts; and, accordingly, that the acts were void.

Appeal from the Circuit Court of the United States for the District of Nebraska.

On March 1, 1879, the legislative assembly of the state of Nebraska passed an act containing 184 sections, entitled "An act to provide a system of revenue." Laws Neb. 1879, pp. 273–349. The act in question outlined and es-

tablished a general scheme for the assessment of all property within the state through the agency of township and precinct assessors, and the assessment, when completed, was made the basis of taxation for all local purposes; that is, by counties, townships, cities, and school districts, as well as for the support of the state government. Sections 39 and 40 of that act; relative to the taxation of railroad and telegraph companies, as amended by an act approved on February 28, 1881 (Laws Neb. 1881, c. 70), were as follows, to wit:

"Sec. 39. The president, secretary, superintendent, or other principal accounting officers within this state, of every railroad or telegraph company, whether incorporated by any law of this state or not, when any portion of the property of said railroad or telegraph company is situated in more than one county, shall list and return to the auditor of public accounts for assessment and taxation, verified by the oath or affirmation of the person so listing, all the following described property belonging to such corporation on the first day of April of the year in which the assessment is made within the state, viz.: The number of miles of such railroad and telegraph line in each organized county in the state, and the total number of miles in the state including the road-bed, right of way and superstructures thereon, main and side tracks, depot buildings and depot grounds, section and tool houses, rolling stock and personal property necessary for the construction, repairs or successful operation of such railroad and telegraph lines; provided, however, that all machine and repair shops, general office buildings, store houses, and also all real and personal property outside of said right of way and depot grounds as aforesaid, of and belonging to any such railroad and telegraph companies, shall be listed for the purposes of taxation by the principal officers or agents of such companies with the precinct assessors of any precinct of the county where said real or personal property may be situated in the manner provided by law for the listing and valuation of real and personal property.

"Sec. 40. The return to the auditor of public accounts herein provided shall be made on or before the 5th day of April, annually.  *  *  *  As soon as practicable after the auditor has received the said return or procured the information required to be set forth in said return, a meeting of the state board of equalization consisting of the governor, state treasurer and auditor, shall be held at the office of said auditor, and the said board shall then value and assess the property of said corporation at its actual value for each mile of said road or line, the value of each mile to be determined by dividing the sum of the whole valuation by the number of miles, of such road or line.

"Said board shall not assess the value of any machine or repair shop, general office buildings, store houses, or any real or personal property situated outside of the right of way or depot grounds of said company. On or before the 15th day of May, or so soon thereafter as the board, or any two thereof, shall have made and determined said valuation and assessment, the auditor shall certify to the county clerks of the several counties in which the property of the aforesaid corporation, or any part thereof may be situated, the assessment per mile so made on the property of such corporation, specifying the number of miles and amount in each of such counties. All such property shall, for the purpose of taxation, be deemed personal property and placed on the tax list as hereinafter provided."

Subsequent sections of the act made it the duty of the county clerk of the respective counties of the state, when the assessment roll was completed and duly revised, to make out a tax list for the use of the county treasurer, with a warrant thereto attached for the collection of the various taxes therein specified.

Section 85 of the act was as follows: "Railroad and telegraph property assessed by the state board of equalization as provided in section 40, shall be apportioned by the county clerk among the respective precincts, townships, school districts, road districts, cities, and villages in which the same may be situated, entered on the tax list and collected by the county treasurer."

Sections 39 and 40 of the general revenue law of the state of Nebraska, above quoted, had not been repealed by any express legislative declaration to that effect prior to December 21, 1891, when the present suit was instituted.

In the year 1887, the legislative assembly of the state of Nebraska passed another act, entitled, "An act incorporating metropolitan cities and defining, regulating, and prescribing their duties, powers, and government." Laws

Neb. 1887, c. 10, pp. 105, 151. Section 79 of the last-mentioned act, omitting some immaterial provisions, was as follows: "Sec. 79. The mayor and council shall have power to levy and collect taxes for general purposes * * * on all the real estate and personal property within the corporate limits of the city, taxable according to the laws of this state, including all interests or business so taxable * * *; the valuation of such property to be taken from the last previous assessment roll of the proper county, and it shall be the duty of the county clerk to permit the city clerk to make out from the assessment rolls of the county, an assessment roll for the city of all property liable to taxation as above specified. * * * Upon the completion of such copy of said assessment roll, the city clerk shall add to said roll all store houses, warehouses, shops, and other buildings within the right of way, or along, or adjoining or adjacent to any side track of such railroad or within the right of way of such telegraph company, used for purpose of rent by said company or purposes other than the ordinary operations of said company, and not appearing upon the county rolls by reason of having been returned to the state board or otherwise assessed the same as personal property as near as may be to correspond with the assessed value of like property on said county roll for the purpose of taxation for municipal purposes, and such assessment shall be subject to equalization by the city council the same as other property when sitting as a board of equalization." The aforesaid section 79 was amended by an act approved on March 16, 1889 (Laws Neb. 1889, c. 13, pp. 89, 118), entitled: "An act to amend sections 1 * * * 79 * * * of an act entitled 'An act incorporating metropolitan cities and defining, regulating and prescribing their duties, powers and government,' approved March 30, 1887, and to repeal said sections as heretofore existing, and also to repeal sections 52, 53 and 106 of said act." As amended in 1889, said section 79 was made to read as follows, omitting some immaterial provisions: "Sec. 79. The mayor and council shall have power to levy and collect taxes for general purposes * * * on all real estate and personal property within the corporate limits of the city, taxable according to the laws of this state, including all interests or business so taxable * * *; *the valuation of such property to be taken from the last previous assessment roll of the proper county as corrected and equalized by the county commissioners of said county, and it shall be the duty of the county clerk to permit the city clerk to make out from the assessment roll of the county, an assessment roll for the city of all property liable to taxation as above specified. * * * Upon the completion of such copy of said assessment roll, the city clerk shall add to such roll all store houses, ware houses, shops and other buildings, within the right of way, or along or adjoining or adjacent to any side-track of such railroad, or within the right of way of such telegraph company, used for purpose of rent by said company, or purposes other than the ordinary operations of said company, and not appearing upon the county rolls by reason of having been returned to the state board, and assess the same as personal property as near as may be to correspond with the assessed value of like property on said county roll for the purpose of taxation for municipal purposes; and such assessment shall be subject to equalization of the city council, the same as other property, when sitting as a board of equalization.*"

On April 9, 1891, another act was passed by the legislative assembly of the state of Nebraska, entitled as follows: "An act to amend sections 11 * * * 79 * * * of chapter twelve (12) A, entitled 'Cities of the Metropolitan Class,' Compiled Statutes, 1889, and to repeal said sections so amended and also to repeal section 31 of said chapter." Laws Neb. 1891, c. 7, p. 73. By the last-mentioned act of 1891 that clause of the aforesaid section 79 which is placed in italics was made to read as follows: "The valuation of such property to be taken from the last previous assessment book or books of the assessor, assessing property for and within metropolitan cities, as by him returned and assessed. The city clerk shall annually make a copy of such assessment for the purposes of taxation as herein provided, and said assessor shall permit the making of the copy hereby contemplated. * * * Upon the completion of such copy of said assessment roll, the city clerk shall add to such roll all store houses, ware houses, shops, and other buildings within the right of way, or along or adjoining or adjacent to any side track of such railroad, or within the right of way of such telegraph company used for purpose of rent by said company, or purposes other than the ordinary opera-

tions of said·company, and not appearing upon the county rolls by reason of having been returned to the state board, and assess the same as personal property, and also all lots and lands outside of the right of way, which said right of way shall only include fifty feet of lands or lots abutting on each side of the main tracks of any railroad, and assess the same as near as may be to correspond with the assessed value of like property on said county roll for the purpose of taxation for municipal purposes; and such assessment shall be subject to equalization of the city council, the same as other property, when sitting as a board of equalization."

Again, on April 7, 1893, by an act passed by the legislative assembly of the state of Nebraska, entitled "An act to amend sections 1 * * * 79 * * * of an act entitled 'An act incorporating metropolitan cities and defining, regulating and prescribing their duties, powers, and government,' approved March 30, 1887, or as subsequently amended, and to repeal said sections as heretofore existing,"—the final paragraph of section 79, above quoted, was further amended so as to read as follows: "Upon the completion of such copy of said assessment roll the city clerk shall add to such roll the road bed, right of way and superstructures thereon, main and side tracks, depot buildings and depot grounds, section and tool houses, rolling stock, telegraph lines, and all other property, real or personal, of any railroad or telegraph company, within such city and not appearing upon the county rolls by reason of having been returned or listed to the state auditor, or for any other reason, and assess the same as near as may be to correspond with the assessed value of like property on said county roll, for the purpose of taxation for municipal purposes; and such assessment shall be subject to equalization of the city council, the same as other property, when sitting as a board of equalization."

The original bill of complaint was filed by the Union Pacific Railway Company, the appellee, against the city of Omaha et al., subsequent to the passage of the act of April 9, 1891, above mentioned, but prior to the passage of the act of April 7, 1893, supra. It alleged, in substance, that by virtue of the provisions of the constitution of the state of Nebraska the aforesaid act of April 9, 1891, was null and void, but that, notwithstanding its invalidity, the defendant the city of Omaha was assuming, in alleged compliance with the provisions of said act, to define the limits of the plaintiff's right of way, and that it was also undertaking to place upon the tax list of the city, and to levy and assess taxes upon, a considerable amount of plaintiff's property, which was described in the bill of complaint, that was situated within its right of way and depot grounds, and that had already been returned to and assessed by the state board of equalization, in accordance with the general revenue law of the state. In view of the premises, the plaintiff company prayed for a decree enjoining the city of Omaha and its officers from entering upon its assessment roll, and from levying or collecting taxes upon, the plaintiff's property that was thus situated within its right of way and depot grounds. Before the case was heard and determined, the aforesaid act of April 7, 1893, was passed and approved, whereupon the plaintiff company filed a supplemental bill, alleging that the act of April 7, 1893, was likewise unconstitutional and void, and praying for similar relief against the enforcement of the provisions of that act.

The circuit court, on final hearing, decided that the proceedings taken by the city authorities under the aforesaid acts of April, 1891 and 1893, to levy and collect city taxes on the various pieces of property described in the complaint, were, as charged in the bill of complaint, without authority of law, and void. It accordingly awarded an injunction against the city of Omaha and its officers substantially as prayed for in the bill of complaint. From that decree the city has prosecuted an appeal to this court.

W. J. Connell, for appellant.
John M. Thurston and W. R. Kelly, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The question which arises on this appeal is whether the above-quoted provisions of the acts of April 9, 1891, and April 7, 1893, which empower the clerks of metropolitan cities to add to the city assessment roll certain railroad property therein specified, and to assess the same for city purposes, are valid or otherwise. The plaintiff below contended, and the circuit court so decided, that the aforesaid provisions of the acts of 1891 and 1893 were void, and of no effect, because they were incorporated into the acts in which they are found in violation of that clause of section 11, art. 3, of the constitution of Nebraska, which declares that:

"No bill shall contain more than one subject and the same shall be clearly expressed in its title. And no law shall be amended unless the new act contains the section or sections so amended and the section or sections so amended shall be repealed."

Constitutional provisions of the same or very similar import are now found in the organic law of several states, and it has been generally agreed that one of the leading objects intended to be accomplished by placing such restrictions upon legislative action was to prevent surreptitious legislation. Another object was to prevent the union in the same act of incongruous matters or subjects of legislation that had no necessary or proper relation. Cooley, Const. Lim. (5th Ed.) pp. 170–173, and cases there cited. It is also very generally held that the constitutional inhibition in question ought not to be so construed as to embarrass legislation "by making laws unnecessarily restrictive in their scope and operation," or by requiring all the objects of a law to be stated with great fullness and detail in the title thereof. Travelers' Ins. Co. v. Oswego Tp., 19 U. S. App. 321, 322, 7 C. C. A. 669, and 59 Fed. 58; Tabor v. Bank, 27 U. S. App. 111, 10 C. C. A. 429, 434, and 62 Fed. 383. At the same time the courts have endeavored on all occasions to so interpret the provision as to put an end to the vicious practice of working into a statute, under a misleading title, important and radical changes in existing laws. In other words, they have so construed the organic law as to make it serve the purpose which it was plainly intended to accomplish. In no state, perhaps, has the effort in this direction been more pronounced than in the state of Nebraska. Thus in one of the early cases which arose in Nebraska involving a construction of the constitutional provision now in question (City of Tecumseh v. Phillips, 5 Neb. 305) it appeared that the legislature had passed an act entitled, in substance, "An act to amend the general incorporation law for cities of the second class, and to legalize certain taxes." One section of the act contained a provision that "in all cases in which cities of the second class had collected and expended moneys collected from licenses for the sale of intoxicating liquors, such expenditures are hereby declared to be legal, and the same are ratified, and such cities are exonerated from any liability therefor." It was held that this section of the law was void, because it did not amend the general incorporation law of cities of the second class in any respect, nor make any allusion to the legalization of taxes, for which reason the subject of the act was not disclosed by the title. In the case of Holmberg v. Hauck, 16 Neb. 337, 20

N. W. 279, it was held that under an act entitled "An act to provide for the organization, government, and powers of cities of the second class having more than ten thousand inhabitants" the legislature could not invest the police judge of the city with "concurrent and co-extensive jurisdiction with the county courts of all ordinary actions," because the power and jurisdiction thereby attempted to be conferred upon the police judge were not fairly comprehended by the title of the act. In the case of State v. Lancaster Co., 6 Neb. 474, it was held that the legislature could not lawfully insert in a law entitled "An act to provide for township organization" provisions whereby the number of county officers were determined, and their duties defined, or other provisions which materially changed the general revenue law of the state, because the title of the act was too restricted to embrace provisions of the latter character. In Ives v. Norris, 13 Neb. 252, 13 N. W. 276, it was held that the following title, to wit, "An act regulating the herding and driving of stock," was not comprehensive enough to authorize a provision, found in one section of the act, allowing damages for the castration of animals in certain cases. So, in Touzalin v. City of Omaha, 25 Neb. 817, 41 N. W. 796, it was held that in an act entitled "An act to incorporate cities of the first class and regulating their duties, powers and government," it was unlawful to insert a provision declaring that "no court or judge shall grant any injunction to restrain the levy, enforcement or collection of any special tax or assessment or any part thereof, made or contemplated being made to pay the cost of any improvement." See, also, Ex parte Thomason, 16 Neb. 238, 20 N. W. 312; Burlington & M. R. R. Co. v. Saunders Co., 9 Neb. 507, 4 N. W. 240; Smails v. White, 4 Neb. 357; Sovereign v. State, 7 Neb. 409; White v. City of Lincoln, 5 Neb. 505, 510.

In the light of these principles, we proceed to consider whether the provisions complained of in the acts of 1891 and 1893 were adopted by the legislature in such manner as will satisfy the constitutional mandate. It is to be observed, in the first place, that neither of said acts is a complete law in itself, but that each act professes to amend an existing statute. The act of 1891 purports to be an amendment of certain sections of chapter 12 A of the Compiled Statutes of 1889, entitled "Cities of the Metropolitan Class," while the act of 1893 refers to the original act of March 30, 1887, as it stood before it was incorporated into the Compiled Statutes of 1889, and purports to amend certain sections of that act. It is obvious, therefore, that if these amendatory acts contain provisions relative to a subject not dealt with by the original act which they respectively profess to amend, the new or additional subject-matter should have been referred to in the title of these acts, as otherwise it would be easy to ingraft upon an existing law any new provision, no matter how important or foreign to its original purpose. The constitution contemplates that the subject of every act shall be clearly expressed in its title, so that the members of the legislature, and the public as well, may be advised, by reading the title, to what it relates. If it was permissible, therefore, to insert in the body of an act entitled an act to amend a certain section or sections of an existing law a subject-

matter of legislation that was not dealt with by the original act, the object sought to be attained by the constitutional provision heretofore quoted could, in many cases, be easily defeated.

Now, section 79 of the act of March 30, 1887, which provided for the incorporation of metropolitan cities, simply authorized the city clerk to add to the assessment roll all storehouses, warehouses, shops, and other buildings within the right of way, or along, adjoining, or adjacent to any side track, of a railroad, used for purpose of rent by said company, or purposes other than the ordinary operations of said company. It was probably assumed by the legislature that the class of property therein described, such as buildings used for purposes of rent, and not for the operation of a railroad, was in no proper sense railroad property, and that under the general revenue law it formed no part of the property that was returned to or assessed by the state board of equalization. For that reason the city clerk was authorized to add that class of property to the city assessment roll. But the act of 1887 left all other property that was distinctively railroad property—such as the right of way and superstructures thereon, main and side tracks, depot buildings and depot grounds, section and tool houses—to be assessed for city purposes, as provided in the general revenue law, by the state board of equalization. It did not pretend to interfere with the general scheme for the assessment of railroad property that was established by the general revenue law, and had been in force for several years.

The act of 1891, however, marks a radical change in the method of assessing railroad property for the purpose of taxation by metropolitan cities that had been pursued under existing laws, and no information or intimation of the proposed change in the method of assessment was given by the title of the act. The act declared, in effect, that the right of way of a railroad within the limits of metropolitan cities should only include 50 feet of lands or lots abutting on each side of its main tracks, and that the city clerks of such cities should assume the functions of assessors, and assess all lots and lands belonging to a railroad company which lay outside of the prescribed limits. This provision fixed an arbitrary limit to the right of way of every railroad within the boundaries of metropolitan cities, without reference to existing laws on that subject. Moreover, it withdrew from the jurisdiction of the state board of equalization a large amount of property that had previously been assessed by the board, and devolved upon city clerks the duty of assessing it for city purposes.

The act of 1893 was even more far-reaching and radical in its operation, in that it directed the city clerk, after he had copied the county assessment roll or book, to add thereto all the property of every railroad within the city, including its roadbed, right of way, and superstructures thereon, main and sidetracks, depot buildings and depot grounds, etc., and to assess the same for the purpose of taxation for city purposes. This was directed to be done without reference to the fact that under the provisions of the general revenue law the same property was required to be returned to the state board of equalization, to be by it assessed for taxation for all purposes, wheth-

er general or local. The title of this act, like the former, conveyed no information of the important changes that would thereby be effected in existing laws.

In view of the premises, we conclude that so much of the acts of 1891 and 1893 as attempted to confer on the clerks of metropolitan cities the enlarged authority heretofore described cannot be sustained as a valid exercise of legislative power. These acts contained provisions relative to a subject-matter that was not dealt with by the act which they professed to amend. They conferred a new power on city clerks of metropolitan cities, to wit, a power to assess for city taxation certain railroad property which, under the law as it stood, could only be assessed for such purpose by the state board of equalization. One of the acts also undertook to define the limits of a railroad's right of way within the limits of metropolitan cities, without reference to the manner in which such rights of way had previously been fixed or defined, which, beyond all question, was a subject not touched by the act of March 30, 1887. Changes such as these in existing statutes could not be lawfully made unless the titles of the acts conveyed more specific information of what the several acts contained. This conclusion, in our judgment, is well warranted by the construction heretofore placed by the supreme court of Nebraska upon that clause of the constitution of the state to which the present discussion relates. Indeed, considering the manner in which provisions of "great pith and moment" were worked into the body of an existing statute by legislative enactments whose titles gave no intimation of the real purpose of the acts, it is evident, we think, that the case at bar is ruled by the principles enunciated in the cases heretofore cited.

A further point is made by counsel for the city of Omaha to the effect that the injunction awarded by the circuit court in its final decree is, in any event, too broad. The contention in this respect, as we understand it, is as follows: That if the acts of 1891 and 1893, which are the only ones complained of in the bill of complaint, are void, then section 79 of the original act of March 30, 1887, remains in full force; and that by the terms of that act the city clerk is authorized to add certain buildings to the assessment roll, which he is precluded from doing by the terms of the present decree. With respect to this contention we only deem it necessary to say that the injunction as entered by the circuit court only relates to certain lots or parcels of land which are specifically described in certain exhibits attached to the bill of complaint, and it does not appear that the city clerk would have the power, under section 79 of the act of March 30, 1887, to add any of the property thus described to the city assessment roll, even if we were disposed to concede that that section of the law is still in force. No occasion exists, therefore, to modify the provisions of the decree as originally entered, and it is hereby affirmed.