CITY OF SOUTH ST. PAUL v. LAMPRECHT BROS. CO.

(Circuit Court of Appeals, Eighth Circuit. June 27, 1898.)

No. 1,043.

1. VALIDITY OF STATUTES—SUBJECTS EXPRESSED IN TITLE.
    A constitutional provision that no law shall embrace more than one subject, which shall be expressed in its title, does not prevent the legislature from inserting in an act any provision which is germane to the general subject to which the act relates. It is only intended to prevent surreptitious legislation, and the union in the same act of incongruous matters, having no natural relation to each other, or to the general subject with which the act deals.

2. SAME—ACT AMENDING MUNICIPAL CHARTER.
    An act revising and amending the charter of a city located on the bank of a large river is not obnoxious to a constitutional provision limiting legislative measures to one subject, merely because it authorizes the municipality, among other things, to issue bonds to defray the cost of a railroad and wagon bridge across the river.

3. MUNICIPAL BONDS—RECITALS—BONA FIDE PURCHASERS.
    The issuance of bonds containing the representation that they are "authorized by" a certain act of the legislature estops the municipality from tendering proof, as against a bona fide purchaser, that they were not so authorized, and that certain requisite preliminary steps were not in fact taken.

4. SAME—AUTHORITY TO CONSTRUCT BRIDGE.
    A charter provision authorizing a city situated on one bank of a river to issue bonds to aid "in defraying the cost and expense of constructing a combination railroad and wagon bridge" is sufficient authority for issuing bonds to aid in building such a bridge across the river in question, though part of the bridge will necessarily be outside the corporate limits.

5. SAME—BONA FIDE PURCHASERS.
    A purchaser in the open market of municipal bonds purporting to have been issued to aid in constructing a bridge across a navigable river is entitled to presume that the secretary of war had approved the proposed location of the bridge.

88 F.—29

**6. Same—Maturity of Bonds.**

Under a charter provision authorizing the issuance of bonds "payable at such times not to exceed 30 years" as may be determined, the bonds are not void when they run 30 years from the time they first begin to bear interest, though this is more than 30 years from the time they were executed.

In Error to the Circuit Court of the United States for the District of Minnesota.

Albert Schaller, for plaintiff in error.
O. M. Metcalf and Henry C. James, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

THAYER, Circuit Judge. This was an action on coupons detached from 74 municipal bonds which were issued by the city of South St. Paul in the year 1891, to aid in defraying the cost of constructing a railroad and wagon bridge across the Mississippi river, on which said city is located. The ·case was tried in the circuit court on a written stipulation waiving a jury, and the trial judge made a special finding of facts. The questions to be considered, therefore, are those which were raised during the trial by exceptions to the admission and exclusion of evidence, or such as are comprehended by the general inquiry whether the facts found by the trial judge are sufficient to sustain the judgment. Searcy Co. v. Thompson, 27 U. S. App. 715, 13 C. C. A. 349, and 66 Fed. 92. We will consider them mainly in the order in which they have been discussed by counsel.

The first proposition to be noticed is the contention of the defendant city that the bonds from which the coupons were detached were issued without authority of law, and are therefore void. On April 23, 1891, the legislature of the state of Minnesota passed an act entitled "An act to amend 'An act to incorporate the city of South St. Paul,' as amended by the several acts amendatory thereof, and to authorize said city to issue bonds for various purposes." Sp. Laws Minn. 1891, p. 674, c. 58. This act altered various provisions of the law under and by virtue of which the city of South St. Paul had been incorporated, and was in the nature of a revision of the existing city charter. All the provisions of the act related to the powers which the city might exercise, or to the mode and manner of their execution. The eighteenth section of said act was as follows:

"The common council is hereby authorized to issue the bonds of said city for the purpose of aiding in defraying the cost and expense of constructing a combination railroad and wagon bridge, or both, as may be determined hereafter, to an amount not to exceed seventy-five thousand dollars ($75,000.00), to be issued in such denominations and payable at such times not to exceed thirty (30) years, and at such rate of interest not to exceed six (6) per cent. per annum, and at such place as may be determined."

It was then provided, in substance, that, before the bonds should be issued, the common council, by a three-fourths vote of all its members, should agree upon a "proposal or plan" for constructing the bridge which should embody an estimate of its total cost; that the proposition to issue bonds should be submitted to a popular vote of

the electors of the city, at a special election, and receive the approval of a majority of the electors voting at such election before the bonds were issued; and that such election should be called within 60 days after the adoption by the council of the proposal or plan for building the bridge.

It is claimed by counsel for the city, as we understand, that, because the aforesaid act contained a provision conferring power to issue bonds for the construction of a bridge, it embraced more than one subject, and was therefore obnoxious to section 27, art. 4, of the constitution of the state of Minnesota, which declares that "no law shall embrace more than one subject which shall be expressed in its title." This contention, we think, is based upon a misconception of the meaning and purpose of the constitutional provision in question. It was not adopted to prevent the legislature from inserting in an act any provision which is germane to the general subject to which the act relates, but to prevent surreptitious legislation, and the union in the same act of incongruous matters, which have no natural relation to each other, or to the general subject with which an act deals. City of Omaha v. Union Pac. Ry. Co., 36 U. S. App. 615, 623, 20 C. C. A. 219, and 73 Fed. 1013; Travelers' Ins. Co. v. Township of Oswego, 19 U. S. App. 321, 332, 7 C. C. A. 669, and 59 Fed. 58; Tabor v. Bank, 27 U. S. App. 111, 10 C. C. A. 429, and 62 Fed. 383; Johnson v. Harrison, 47 Minn. 575, 577, 50 N. W. 923; Montclair v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. 391; Cooley, Const. Lim. (6th Ed.) pp. 169–172, and cases there cited.

This provision of the constitution ought not to receive a narrow or technical construction, which will embarrass legislation by making laws unnecessarily restrictive in their scope and operation; but, like all provisions of the organic law, it should be fairly and liberally interpreted and enforced, so that it will serve to prevent the abuses at which it was aimed, without placing unnecessary restraints upon legislative action. An act like the one now in hand, which revises and amends the charter of a city located on the bank of a large river, is certainly not obnoxious to a constitutional provision limiting legislative measures to one subject, merely because the act authorizes the municipality, among other things, to issue bonds for the purpose of defraying the cost of a railroad and wagon bridge across such river. A provision of that kind has a natural and an obvious relation to the general subject, to which the attention of the legislature was for the time being addressed, and for that reason such a provision must be pronounced germane to the general purpose of the act. We have no doubt that the act of April 23, 1891, would be pronounced valid by the courts of Minnesota. City of St. Paul v. Colter, 12 Minn. 41, 50 (Gil. 16); City of Winona v. School Dist. No. 82, 40 Minn. 13, 41 N. W. 539; Boyle v. Vanderhoof, 45 Minn. 31, 47 N. W. 396; Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923; State v. La Vaque, 47 Minn. 106, 49 N. W. 525; Willis v. Mabon, 48 Minn. 140, 155, 50 N. W. 1110.

A variety of other questions are suggested in the brief of counsel for the city, and have been argued at some length, which, for the sake of brevity, may be disposed of collectively. It is contended, in substance, that the act of April 23, 1891, did not authorize an issue

of bonds to build a bridge like the one involved in the case at bar, which was partly outside of the corporate limits of the city; that it did not warrant the issuance of bonds to build a bridge across a navigable stream unless the consent of the secretary of war to the proposed location of the bridge had been obtained; that the common council did not adopt a proposal or plan for building the bridge, within the fair intent and meaning of the act of April 23, 1891, before the bonds in controversy were issued; that the proposal or plan, such as it was, contained no estimate of the cost of the structure; that the original resolution of the council adopting such proposal or plan, if the same was adopted by the council, was never signed by the mayor of the city, as it should have been to become operative; that William Thuet, who signed the bonds as comptroller of the city, was not at the time a city officer; that no valid election was held to obtain authority from the electors to issue the bonds; and that the provisions of the charter of the city of South St. Paul relative to the signing and publication of ordinances and resolutions were not followed in so far as the ordinances and resolutions relating to the issuance of the bonds in suit were concerned.

It is to be observed, however, that some of the assumptions of fact contained in the foregoing propositions are contrary to the special finding which was made by the trial judge. The trial judge found, among other things:

"That the common council of South St. Paul, by a vote of more than three-fourths of all its members, agreed to adopt, and did adopt, on or about May 7, 1891, a proposal or plan for building a combination railroad and wagon bridge across the Mississippi river, at or near South St. Paul, which proposal or plan stated the plan and specifications for constructing said bridge, together with an estimate of the total cost thereof, and that on the same date said common council of South St. Paul determined to submit to the qualified electors of said city the proposition of issuing the bonds described in the complaint, in aid of said bridge, and gave due notice to the qualified electors that an election would be held in the several election districts to determine the question whether the said bonds should be issued, and that an election was accordingly held on the 28th day of May, 1891, at which time a majority of the qualified electors voting at said election voted in favor of issuing said bonds; * * * that thereafter, on May 28, 1891, at a meeting duly held, the common council of the city of South St. Paul adopted a resolution of which Exhibit B (the same being a resolution authorizing the issuance of the bonds in suit) attached to the answer is a true copy, and that the same was duly signed by the mayor; * * * that William Thuet was on the 29th day of May, 1891, the city comptroller of the city of South St. Paul; * * * that the plaintiff purchased the coupons described in the complaint before maturity, * * * and in the open market, and is a bona fide holder thereof."

Inasmuch as the findings by the trial judge are not open to dispute in this court, but must be accepted as conclusive (Insurance Co. of North America v. International Trust Co., 36 U. S. App. 291, 302, 303, 17 C. C. A. 616, and 71 Fed. 88), it follows that several of the contentions above mentioned are without merit. But, if such was not the case, it is nevertheless true, we think, that the defendant city is estopped in this action from asserting the invalidity of the bonds on any of the grounds last above indicated, by the recital which the bonds contained, and by the finding of the trial court that the plaintiff pur-

chased the coupons in suit before maturity in the open market, and is a bona fide holder thereof.    The recital last referred to is as follows:

"This bond is one of a series of seventy-five bonds, issued to aid in building a bridge, and authorized by act of the legislature of the state of Minnesota, at a session thereof held in the year 1891, and in compliance with a resolution of the common council of the city of South St. Paul, at a regular meeting thereof, held May 28, 1891; and, to the payment of this bond and interest thereon, the faith and credit of the city of South St. Paul are irrevocably pledged."

The bonds were signed by the mayor of the city of South St. Paul. They were attested by the city clerk, countersigned by the city comptroller, and bore the imprint of the corporate seal.    It was a part of the official duty of these officers to execute and deliver the bonds, and, before doing so, to ascertain and determine whether all of the antecedent conditions prescribed by the act under which they were issued, such as the adoption of a proposal or plan, the holding of a lawful election, and the passage of proper resolutions or ordinances, had been duly performed.    Under these circumstances, the fact that bonds were issued containing a representation that they were "authorized by act of the legislature of the state of Minnesota at a session thereof held in the year 1891" estops the municipality from tendering proof, as against a bona fide holder of the securities, that they were not so authorized, and that certain preliminary action necessary to validate the bonds had not in fact been taken.    A power having been vested in the city, by the act to which reference is made in the bond, to issue such obligations for the purpose therein expressed, an innocent purchaser was entitled to rely on the representation that they were authorized by the act, the same being a representation, in substance, that all antecedent conditions named in the act had been duly performed.    City of Huron v. Second Ward Sav. Bank, 30 C. C. A. 38, 86 Fed. 272; National Life Ins. Co. of Montpelier v. Board of Education of Huron, 27 U. S. App. 244, 266, 10 C. C. A. 637, and 62 Fed. 778; E. H. Rollins & Sons v. Board of Com'rs, 49 U. S. App. 399, 26 C. C. A. 91, and 80 Fed. 692; School Dist. v. Stone, 106 U. S. 183, 187, 1 Sup. Ct. 84; Town of Colloma v. Eaves, 92 U. S. 484; Commissioners v. Bolles, 94 U. S. 104; County Com'rs v. Beal, 113 U. S. 227, 238, 239, 5 Sup. Ct. 433; Cairo v. Zane, 149 U. S. 122, 13 Sup. Ct. 803; Evansville v. Dennett, 161 U. S. 434, 443, 16 Sup. Ct. 613; Commissioners v. Block, 99 U. S. 686; San Antonio v. Mehaffy, 96 U. S. 312.

With respect to the claim that the bonds in controversy were invalid because the bridge as projected did not lie wholly within the corporate limits of the city of South St. Paul, and that they were further affected by the fact that at the date of their issue the secretary of war had not fixed the exact location of the structure or approved of the proposed location, it may be said, in this connection, that neither of these considerations can be held to have impaired the validity of the bonds.    Such considerations could in no event impair their validity in the hands of an innocent purchaser for value.    The power to issue bonds, which was granted by section 18 of the act of April 23, 1891, was doubtless conferred for the express purpose of

enabling the city to aid in the construction of a bridge across the Mississippi river, a part of which structure would necessarily be on the opposite or east bank of the river, and outside of the city limits; and the bridge so had in view was of as great advantage to the city as it would have been if located wholly within the corporate boundaries. Ample authority is found in the act for the construction of the bridge now in question.

We are also of opinion that a purchaser of the bonds in the open market was not bound to inquire whether the secretary of war had approved of the proposed location of the bridge on account of which they purported to have been issued. The congress of the United States had authorized the bridging of the Mississippi river with a railroad, wagon, and foot passenger bridge "at a point suitable to the interest of navigation, *  *  * at or near the city of South St. Paul." This act was passed on April 26, 1890 (26 Stat. 69, c. 163). And, since the city had undertaken to aid in the construction of such a bridge across the river at that point, it was the duty of the city authorities to obtain from the secretary of war an approval of the plan of the structure and its proposed location before the bonds were issued; and a purchaser of the bonds in the open market was entitled to presume from their mere presence in the market that this duty had been duly performed, and that such approval had been obtained.

The validity of the bonds is also challenged on the ground that they were issued to aid in the construction or equipment of a railroad, and were in excess of the amount which could be lawfully issued for that purpose, under section 15, art. 9, of the constitution of the state of Minnesota. That section of the constitution, in substance, limits the sum which any municipal corporation may contribute, in the shape of bonds or otherwise, to aid in the construction or equipment of any railroad, to 5 per centum of the value of the taxable property within such corporation, to be ascertained by the last assessment on said property for state and county taxation previous to incurring such indebtedness; and it is assumed, in support of the argument in behalf of the city, not only that the bonds in suit were railroad aid bonds, within the meaning of the constitution, but also that the bonds were not issued until 1894, when the assessment of the city had fallen to a point which would not warrant an issue of bonds to the amount of $75,000, that being the amount which was actually voted and issued. We are strongly disposed to conclude that bonds like those involved in the present controversy, which were issued in aid of building a bridge over the Mississippi river that was designed for the use o* wagons and pedestrians as well as for the transportation of railroad trains, should be esteemed bonds issued in aid of a local improvement, and that they were in no proper sense "railroad aid bonds," within the meaning of the constitution. But, be this as it may, these bonds were executed on May 29, 1891. The trial court so found, and that finding must be regarded as conclusive. The last assessment preceding that date, according to the statement of counsel for the city, showed that the aggregate amount of city property subject to taxation was $1,654,-343, which was a sum more than sufficient to warrant the issue

here in question.   The result is that the plea that the issue was excessive, and in violation of the constitution, is, in any event, untenable.

It is finally urged that the bonds were void upon their face, because they did not mature for more than 30 years after they were executed, and for that reason ,were not authorized by section 18 of the act of April 23, 1891.   The fact is, however, that the bonds did not begin to bear interest until June 1, 1894, and they were payable on that day 30 years thereafter.   This was a substantial compliance with the law, as has several times been held, and the bonds were not void, nor the validity thereof in any wise affected, for the reason last assigned. Township of Rock Creek v. Strong, 96 U. S. 271, 277; Dows v. Town of Elmwood, 34 Fed. 114, 117.

The result is that the record before us discloses no error, and the judgment of the circuit court is therefore affirmed.