## OLD COLONY TRUST CO. et al. v. CITY OF WICHITA.

(Circuit Court, D. Kansas, Second Division. July 25, 1903.)

### No. 974.

1. TRUSTEES—RIGHT TO MAINTAIN SUIT—PRESERVATION OF TRUST ESTATE.

A trustee in a trust deed has the power, and it is its duty, independently of the provisions of the trust deed, to invoke the aid of a court of equity to preserve the trust estate whenever the necessity arises.

2. MORTGAGES—CONSTRUCTION—TRANSFER OF LEASEHOLD ESTATE.

A telephone company executed a trust deed to secure bonds covering all of its property, real and personal, situated in the states of Missouri and Kansas, with all the privileges and appurtenances thereto appertaining, and all its rights and franchises. It owned in fee simple a number of telephone exchanges and plants in the state of Missouri, and held and operated a number in the state of Kansas under a lease from another company for 99 years, covering all the property and franchises of the lessor company. Held, that it was the purpose of the parties to cover all the interests of the grantee in any of the properties described, and that the terms of the deed were broad enough to include its leasehold estate in the Kansas properties and all its rights therein.

3. CORPORATIONS—TRANSFERS OF PROPERTY—RIGHT TO ATTACK VALIDITY.

In a suit, by the trustees in a trust deed executed by a telephone company on all its properties and franchises to secure bonds which it has issued and sold, against a city, to protect the franchise rights of the company, the defendant cannot question the legality of the transfers by which the company acquired the ownership of the property and franchises from other companies, on the ground that they were ultra vires.

4. TELEPHONE COMPANIES—FRANCHISE GRANTED BY CITY—ASSIGNABILITY.

A city ordinance, granting to a telephone company, "its successors and assigns," the right to erect and maintain poles and wires in the streets, grants a franchise which is assignable under the laws of Kansas, although the words "successors or assigns" do not appear in the title; and such franchise passed by a transfer by the grantee of all its property and franchises to another company.

5. SAME—POWER OF CITY TO REPEAL GRANT OF FRANCHISE.

A franchise granted by a city of Kansas to a telephone company to erect and maintain its poles and wires in the streets, no term being stated, under the laws of the state continues for 20 years, and during such term the city has no power to nullify it, in the absence of any provision therein reserving such right.

6. SAME—REPEAL OF ORDINANCE—EXECUTION OF POWER RESERVED.

A city ordinance, granting a franchise to a telephone company which under the law of the state would expire at the end of 20 years, provided that the rights granted "shall be for the period of five years, and until terminated by the resolution of the mayor and councilmen * * * upon six months' notice, to be served on the managing agent of said company," which notice might be served at any time after six months immediately preceding the expiration of five years. Held, that such franchise was not terminated by a motion, adopted by the council six months before the expiration of the five years, directing the clerk to notify the company "when their present franchise would expire," and that the city would require them to remove their wires and poles at that time, and the service of a notice by the clerk reciting the record of the adoption of the motion, and in which he fixed the time for expiration of the franchise, without any further action to that end having been taken by the mayor and council.

7. SAME—VALIDITY OF INCORPORATION—WHO MAY ATTACK.

A city, which has granted franchises to a telephone company organized under the laws of the state, on which the company has acted in

constructing its plant and lines, cannot question the validity of the company's incorporation in a suit to restrain such city from interfering with the exercise of the rights it has granted.

8. SAME—UNLAWFUL INTERFERENCE WITH LINES BY CITY—RIGHT OF MORTGAGEE TO INJUNCTION.

Where a city, which had granted a franchise to a telephone company to use its streets, pursuant to which the company had constructed and was operating its plant, while such franchise was in force, without lawful authority, undertook to compel the removal of the company's poles and wires by the passage of an ordinance prohibiting their extension or their maintenance unless the company should obtain a franchise therefor, under penalty of fines, and also passed a resolution requiring the company to remove its poles and wires, and directing their removal by the marshal after a certain date, the trustees in a trust deed, executed by the company, covering all its property and franchises, were entitled to assume that the directions of the city would be carried out, and to maintain a suit to protect the trust property by enjoining the city from unlawfully interfering therewith.

In Equity. Suit for injunction.

R. R. Vermilion, C. V. Ferguson, and F. F. Rozzelle (Edward P. Gates, Lucien Baker, and Robert P. Clapp, of counsel), for complainants.

A. E. Helm, David Smyth, and S. S. Ashbaugh, for defendant.

ROGERS, District Judge. This cause came on to be heard on March 16, 1903, on the complaint, answer, replies, and written briefs, the complainants being represented by R. R. Vermilion, C. V. Ferguson, F. F. Rozzelle, Edward P. Gates, Lucien Baker, and Robert P. Clapp, and the defendant by A. E. Helm, David Smyth and S. S. Ashbaugh. The defendant moved the court for leave to file an amendment to its answer, which motion was taken under advisement by the court, to be determined on the final hearing, and thereupon the case was heard upon the pleadings, briefs, and argument of counsel, and taken under advisement, with leave to file briefs, which was done; and the court, being now well and sufficiently advised, doth grant the motion of the defendant to file its amendment to the answer as of March 16, 1903—the said amendment being found on pages 268, 269 of the printed record, and to which motion replication is made to apply. And, the court being also well and sufficiently advised as to the merits of the suit, argument, both oral and on brief, has taken a wide range, exhaustive and instructive, covering many points which I do not consider essential to a correct solution of the case. Only such parts of the pleadings and proof, and the contentions, will be noticed as seem necessary, although every part of the case has had a careful and painstaking consideration.

The first question to be considered is whether the Old Colony Trust Company and Charles P. Hubbard occupy such a relation to the subject-matter of the litigation as entitles them to maintain a bill under the circumstances disclosed by the pleadings. It will be necessary, in order to determine this question, to narrate as briefly as possible how the trusteeship of complainants came about.

The Merchants' Telephone & Telegraph Company was incorporated on the 21st of March, 1881, under the laws of Kansas, for the

purpose, as shown by its charter, "of building, maintaining, and operating lines of telegraph and telephone between cities, towns, and villages in the state of Kansas, and in places adjacent thereto, and within cities, towns, and villages in Kansas, and, in addition, for the purpose of manufacturing electric and telephonic instruments and their sale or rental"; its main office being at Wyandotte, Kan., its charter to run for a period of 20 years. Another corporation of exactly the same name was, on the 25th of August, 1881, under article 5, c. 21, of the Revised Statutes of Missouri of 1879, incorporated. Nothing is stated as to the purpose for which it was organized, or as to where it was to engage in business; but its principal office was at Kansas City, Mo. It does not appear from the statutes of Missouri that these statements are required to be made in the articles of association. Another corporation, known as the Merchants' Telephone & Telegraph Company of Kansas and Missouri, was incorporated on the 1st day of November, 1881, under the laws of the state of Kansas; it being a consolidation of the two last-named companies hereinbefore described. The purpose for which said corporation was formed, as recited in its articles of incorporation, was "to construct, maintain, and operate telegraph lines, telephone lines, and lines for the communication of messages from place to place by any means; to purchase or lease, and operate purchased or leased, telegraph lines, telephone lines, and lines for the communication of messages; to receive and transmit messages; to build and maintain lines of telegraph and telephone; to manufacture and use instruments and apparatus for use in connection with such lines, and rent, lease, sell, or otherwise dispose of the same; also to rent or lease telephonic apparatus furnished us as licensees of the American Bell Telephone Company; to acquire, by purchase, lease, or otherwise, the right to use instruments, apparatus, and all inventions or means devised or used for the communication of messages from place to place, and to use the same, and to sell, lease, or otherwise dispose of such rights to others; and to carry on a general telegraph and telephone business within the states of Kansas and Missouri." The term of its life was 20 years, and its principal office Kansas City, Mo. Its business was to be carried on in the states of Kansas and Missouri. Another corporation, of exactly the same name as the last, was formed on the 8th of November, 1881, under the laws of the state of Missouri—it being a consolidated company, also, of the same companies which were consolidated under the laws of Kansas, as before stated; and the purposes for which this last corporation was formed, as recited in its articles of association, were exactly the same as the purposes for which the company consolidated under the laws of Kansas was formed. Its term of existence was 20 years, and its principal office Kansas City, Mo. These last two corporations were what are known as "consolidated corporations" under the laws of the respective states under which they were organized. These consolidated corporations began the construction of a telephone system in Wichita, Kan., on the 9th of November, 1881, and completed the same, and continued to construct, maintain, and operate the same from that day until about the 24th of May, 1883, and in the construction, maintenance, and

operation of said exchange it placed and maintained its poles and wires along and across and upon certain streets, alleys, and ways of the said city of Wichita; and said company, in the operation of said exchange, furnished telephone service to its subscribers in said city, and during this time constructed, maintained, and operated telephone exchanges and lines in the cities óf Ft. Scott, Emporia, and Leavenworth, and other towns and cities in the state of Kansas.

On the 24th of May, 1883, the said Merchants' Telephone & Telegraph Company (Consolidated) by bill of sale conveyed to E. T. Gilliland "all its right, title, and interest in and to the property of the said Merchants' Telephone & Telegraph Company (Consolidated), including its capital stock, office furniture in its several exchanges and in its Kansas City offices, all telephonic apparatus and supplies, in use and not in use, and everything whatsoever belonging to said company, whether in actual service, in storeroom at Kansas City, or en route—the consideration being the sum of $65,000"; and on the 24th of May, 1883, the said E. T. Gilliland assigned in writing said bill of sale, thereby conveying all his right, title, and interest to and in the properties described therein to the United Telephone Company, which was a corporation organized on the 4th of April, 1883; under article 5, c. 1, of the Revised Statutes of Missouri of 1879; the articles of association being in the usual form under the laws of that state, and its principal office being in Kansas City, Mo.   The United Telephone Company, immediately after said purchase, took possession of, and continued to operate, maintain, and extend, said telephone exchanges hereinbefore mentioned, including the exchange in the city of Wichita, Kan., until the 25th of February, 1887.   On that day the Missouri & Kansas Telephone Company, which was a corporation organized under the laws of the state of Missouri on the 24th of August, 1882, exchanged its stock with the stockholders of the said United Telephone Company, and by such exchange acquired all the stock of said United Telephone Company, and on said day said United Telephone Company executed to the said Missouri & Kansas Telephone Company a deed whereby it conveyed to the said Missouri & Kansas Telephone Company, in consideration of $210,769 of stock in the Missouri & Kansas Telephone Company, which was then paid, its telephone lines, embracing a large number of exchanges and lines covering the states of Missouri and Kansas, and, among others, the telephone properties at Wichita, Kan., the effect of which deed was, to all intents and purposes, to absorb the United Telephone Company by the said Missouri & Kansas Telephone Company.

On the 25th of February, 1887, and after this deal was had, the said Missouri & Kansas Telephone Company took possession of all of said telephone exchanges in said state of Kansas, including the telephone exchange in the city of Wichita, and continued to . extend, maintain, and operate· the same until the 21st day of June, 1887, when the said Missouri & Kansas Telephone Company, hereafter called the "Missouri corporation," executed to another corporation of the · same name, incorporated under the laws of the state of Kansas on the 20th of May, 1887, hereafter called the "Kansas corporation," a deed of conveyance to all the properties which it owned in the state

of Kansas, whether acquired from the United Telephone Company or otherwise. The effect of this transaction was to leave all the properties which had originally belonged to the Missouri corporation, situate in the state of Missouri, still vested in the Missouri corporation, and to vest all of the properties situate in the state of Kansas, which had previously belonged to the Missouri corporation, in the Kansas corporation, including the telephone exchange and properties in the city of Wichita. The consideration paid by the Kansas corporation to the Missouri corporation was the transfer to the Missouri corporation of $249,500 of the $250,000 for which said Kansas corporation was capitalized. On the 1st day of June, and immediately after this transfer was made, the said Kansas corporation leased the same properties back to the Missouri corporation for the term and period of 99 years, the property so leased being described as follows:

"All of the plant and property of all kinds and character, the exchanges, overland lines, leases, patents, rights of way, ordinances, profits, licenses, lines, books, papers, material, extraterritorial rights, moneys, and all the assets of all kinds belonging to the said the Missouri & Kansas Telephone Company of Kansas, whether purchased of the Missouri & Kansas Telephone Company of Missouri, or built, made, or owned, and any rights, franchises, telephone lines, plants, and property of every description that may be acquired by the said the Missouri & Kansas Telephone Company of Kansas."

The consideration paid was the sum of one dollar annually during the lease, and the assumption and discharge of all liabilities and obligations of the Missouri corporation; and the conveyances in said lease were made to extend to and be binding upon the successors and assigns of the parties to the lease. Immediately thereafter the Missouri corporation took possession of and continued to operate the said exchanges and properties so acquired by it as aforesaid, including said telephone exchange and lines in the said city of Wichita, and continued to extend and maintain the same until the 30th day of June, 1902.

On the 2d of October, 1889, and while said lease was in full force and effect, the Missouri corporation by deed of trust conveyed all its properties, both in the state of Kansas and in the state of Missouri, including said leased properties, to the Old Colony Trust Company as trustee, to secure $1,250,000 of bonds issued by it; and by a subsequent instrument of writing Charles J. Hubbard, a citizen of Kansas City, Mo., was made a co-trustee. After this deed of trust was executed, to wit, on the 30th of July, 1902, the said Missouri corporation canceled and surrendered its said lease to the Kansas corporation, its successors and assigns, whereby all the properties covered by said lease and described in said deed of release—as follows: "All of the plant and property of all kinds and character, the exchanges, overland lines, leases, patents, rights of way, ordinances, profits, licenses, lines, books, papers, material, extraterritorial rights, moneys, and all the assets of all kinds belonging to the said the Missouri & Kansas Telephone Company of Kansas, whether purchased of the Missouri & Kansas Telephone Company of Missouri, or built, made, or owned, and any rights, franchises, telephone lines, plants, and property of every description that may be acquired by the said the Missouri & Kansas Telephone Company of Kansas"—became vested in

the said Kansas corporation; but said release was made subject to the said deed of trust hereinbefore referred to, and the said Kansas corporation, by virtue of the same deed of release, covenanted with the Missouri corporation to assume and pay bonds secured by the deed of trust aforesaid, from bond No. 1 to bond No. 250, both inclusive, making in all $250,000, and agreed, also, to keep and observe all the conditions and provisions in said deed of trust. The Kansas corporation above referred to was organized, as before stated, on the 20th of May, 1887, and its articles of association recite that it was organized for the purpose of "the construction, maintenance, and operation of telephone and telegraph lines and telephone exchanges, the maintenance and operation of telegraph stations in all the counties of the state of Kansas, and the manufacture and sale of electrical apparatus." Its principal office was in Topeka, Kan., and the term of its existence was 99 years.

It will thus be seen that the interest of the complainants is as trustees for the bondholders, whose bonds are secured by a deed of trust embracing all the properties of both the Missouri and Kansas corporations, situate in the states of Missouri and Kansas, including the telephone exchange and properties in the city of Wichita. The general principle is believed to be settled that the trustee, independent of the provisions of the trust deed, has the power, and it is his duty, whenever the necessity arises, to invoke the aid of a court of equity to preserve the trust estate. This question was under consideration by the author of this opinion in the case of Guardian Trust Co. v. White Cliffs Portland Cement & Chalk Co. (C. C.) 109 Fed. 527, in which it is said:

"It was contended, in this regard, that the trustee was limited to the provisions of the deeds of trust with reference to any action he might take in the premises. But the contention cannot be maintained. In paragraph 749, Perry on Trusts, the author says: 'The corporation itself issues the bonds, and promises to pay the principal and interest at a time named. So long as the corporation pays the interest or the principal of the bonds as agreed, the trustees have little or nothing to do. The general principles of the law of trusts apply to them. Sturges v. Knapp, 31 Vt. 1. They hold the security in trust for the bondholders as cestuis que trustent; and they must act in good faith and for the best interest of all. They must take care that the property is not wasted or depreciated or rendered worthless as security.' And this rule is believed to be universally recognized. Short's Ry. Bonds & Mortg. par. 284, and cases there cited; Phinizy v. Railroad Co. (C. C.) 56 Fed. 277. In the last-named case Judge Simonton lays down the broad principle that 'a trustee can always come into a court of equity for aid or instruction in conserving his trust.' The trust company, therefore, had the right, and it was its duty, when, in its opinion, the security covered by its mortgage was jeopardized, or the interest of the bondholders, for whom it was trustee, was endangered, to come into a court of equity, independent of the provisions of the mortgage, under the general principle of the law of trusts, for the purpose of conserving the property covered by the mortgage."

But in this case it is contended that the trust deed does not cover, or purport to cover, the leasehold interest of the Missouri corporation in the properties leased to it by the Kansas corporation, which properties were situate in the state of Kansas. The leased properties are described as follows:

"All of the plant and property of all kinds and character, the exchanges, overland lines, leases, patents, rights of way, ordinances, profits, licenses,

lines, books, papers, material, extraterritorial rights, moneys, and all of the assets of all kinds belonging to the said the Missouri & Kansas Telephone Company of Kansas, whether purchased of the Missouri & Kansas Telephone Company of Missouri, or built, made, or owned, and any rights, franchises, telephone lines, plants, or property of every description that may be acquired by the said the Missouri & Kansas Telephone Company of Kansas."

By the terms of the trust deed the Missouri corporation conveyed to the Old Colony Trust Company

"All and singular the property, present and future, real and personal, of the telephone company, situated in the states of Missouri and Kansas, including all lands, hereditaments, telephonic systems, exchanges, lines, rights, titles, franchises, interests, privileges, licenses, choses in action, contracts, patents, easements, patent rights, and licenses under patents now belonging to or hereafter acquired by the telephone company in or for the states of Missouri and Kansas, and which, without in any wise limiting the generality of the foregoing, shall include the property, privileges, rights, franchises, and licenses under patents specified or referred to in the first schedule hereto, to have and to hold the same (hereinafter called the 'trust premises'), with all the privileges and appurtenances thereto appertaining or now or hereafter belonging, unto and to the use of the trustee and its successors and assigns, forever, to secure the payment of the bonds hereinafter described at the times hereinafter provided, and upon and for the trusts and purposes herein contained."

A careful reading of the trust deed satisfies the court that it was the purpose of the parties to the deed to transfer all the interest to the complainant which it had in the properties therein described, and I am of opinion that the trust deed is broad enough to cover the leased property and everything appertaining thereto; nor does the provision found in the seventeenth paragraph of the trust deed, whereby it is covenanted that the "telephone company is lawfully seised and possessed of the trust premises in fee simple and absolute, except as expressly stated in the first schedule," etc., tend to shake that conclusion of the court. It did own and convey all the Missouri properties, and it owned a leasehold estate, also, in the Kansas properties, and manifestly that was what was intended by the parties should pass by the trust deed.

It is also contended that the transactions by which the Missouri corporation absorbed the United Telephone Company, as hereinbefore stated, and the Kansas corporation transferred $249,500 of its stock to the Missouri corporation for the Kansas properties, were illegal, and did not vest the properties in the Kansas corporation, and that these acts were ultra vires and void. If this were so (which, in the opinion of the court, is not the case), is it within the power of the defendant to question those transactions? I think not. Those are questions which, in a proper suit between the interested parties, might be raised; but they are questions in which the defendant has no interest, and which could not be litigated in the absence of the contracting companies, who are not parties to this suit.

Assuming that the proper parties were before the court, what would be the effect of holding invalid the transfer by the United Telephone Company of its properties to the Missouri corporation for its stock, and the transfer by the Missouri corporation of its properties situate in the state of Kansas to the Kansas corporation in considera-

tion of its stock? Manifestly the United Telephone Company has parted with its properties, and they have been improved and extended by the Missouri corporation. The Missouri corporation has likewise parted with its properties in the state of Kansas to the Kansas corporation, and the latter has improved and extended its properties. Meantime the whole properties have been incumbered by the trust deed, and the bonds have been sold and passed into the hands of third parties. Is the doctrine of ultra vires applicable to any such condition of things as that? In Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693, it is said:

"The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail, where it would defeat the ends of justice or work a legal wrong."

It will be remembered that in the case at bar there was nothing in the laws of Missouri or Kansas prohibiting the transactions referred to. The most that can be said is that they were not expressly authorized by the laws of those states. In footnote "a," p. 729, Green's Brice's Ultra Vires (2d Am. Ed.), will be found a discussion, as well as a collation of decisions, both federal and state, with reference to the subject under consideration, from which I think it may be fairly assumed, in such a case as that at bar, that the transactions complained of, especially when executed, will not be disturbed. For all the purposes of this case it must therefore be held that the several instruments and conveyances whereby the Missouri corporation became the holder of the properties covered by the trust deed are valid and effective for the purposes intended, and therefore the trust deed is valid as it applies to the properties described therein as situated in the state of Kansas—among others, the Wichita telephone property.

This brings us to the consideration of the question as to how or in what way the complainants are interested in the maintenance of this suit. On the 8th day of November, 1886, the city of Wichita passed the following ordinance:

Schedule A.    Ordinance No. 391.

(Published Nov. 10, 1886.)

An Ordinance Granting the Right of Way through the Streets and Alleys to the United Telephone Company and Providing for a Telephone Fire Alarm System.

Be it ordained by the mayor and councilmen of the city of Wichita:

Section 1. That the right is hereby granted to the United Telephone Company, its successors and assigns, to erect and maintain posts, poles, piers, mains, manholes and fixtures necessary in carrying electric wires in, through, along, above or under ground, and across the streets and alleys of said city: provided that they shall be so placed as not to interfere with the free use of said streets and alleys as public highways; and provided, further, that in case of dispute between property owners and said company as to location of their poles, posts, piers, mains, manholes or fixtures the question shall be referred to the city engineer and the location determined by him.

Sec. 2. In lieu of any special license tax to be levied by said city, the said telephone company will furnish the said city of Wichita, complete sets (as may be required by the city council) of telephonic instruments to be placed in the different fire companies' houses, the office and residence of the fire marshal, and the central office of the telephone company, connecting the same by an insulated wire in metallic circuit, at an annual rental of twenty-five dollars ($25.00) for each set.

123 F.—49

Sec. 3. The said United Telephone Company will maintain and keep in good working order the said wire and instruments for fire alarm and fire department purposes only at her own expense, and will allow all its wires and instruments to be used for giving the location of fire to its central office, and will promptly transmit this information to the fire marshal and the fire company houses simultaneously. The said telephone company will keep its central office open at all hours of the day and night.

Sec. 4. Any officer of the city shall have the authority to cut the wires of said company in case of fire or other public exigency.

Sec. 5. The said telephone company shall remove its wires when notified so to do by the fire marshal, in order to admit of moving houses along the street, at cost of the said mover.

Sec. 6. Any person (except in the case of fire) who shall carelessly or willfully, without notice to said company, cut, injure, or break any wires, or deface any poles of said company shall be deemed guilty of a misdemeanor, and upon conviction fined not less than five dollars, nor more than fifty dollars.

Sec. 7. This ordinance shall take effect and be in force from and after its publication in the Wichita Daily Beacon.

Approved November 8, 1886.  B. W. Aldrich, Mayor.

Attest: Fred. Schattner, City Clerk.

This ordinance has never been repealed, and, no time being fixed in the ordinance as to when it would expire, under the statutes of Kansas its life is 20 years. In the deed of the United Telephone Company to the Missouri corporation, dated February 25, 1887, whereby all the properties of the United Telephone Company situated in Missouri and Kansas passed to the Missouri corporation, including the Wichita properties, the said properties which are specifically described, "and each and every part thereof, with all the appurtenances thereunto belonging or in any wise appertaining," passed to the Missouri corporation. The effect of this deed was to transfer the benefits of this ordinance to the Missouri corporation, and the United Telephone Company had the right to transfer it, because the ordinance granted the franchise to the "United Telephone Company, its successors or assigns"; and the fact that the title of the ordinance does not specify that the franchise is not granted to the "successors and assigns" of said telephone company, in the opinion of the court, does not restrict the provisions of the ordinance to the United Telephone Company alone. That omission in the title (if it can be called an omission) could not possibly mislead any one. No one could read two lines of the first section of the ordinance without discovering that the ordinance was granted to the United Telephone Company, "its successors and assigns." The title of the ordinance related to a single subject, and was, in the opinion of the court, ample notice to all who might be interested therein, and a substantial compliance with the laws of Kansas.

By the terms of the fourth paragraph of the stipulation it is made to appear that the ordinance passed by conveyance to the Kansas corporation; but it is of no concern whether it did or not. If it did not so pass, it remained vested in the Missouri corporation when the deed of trust was executed, and was covered by it. If it did vest in the Kansas corporation, then it passed back to the Missouri corporation by the express provisions of the lease of June 1, 1887, and was therefore the property of the Missouri corporation when the deed of

trust was executed; and when the lease of June 1, 1887, was canceled, the benefits of this ordinance reverted, or returned, to the Kansas corporation. At all events, it is plain that the ordinance of November 10, 1886, was the property of the Missouri corporation when the deed of trust was executed, and it was covered by the deed of trust, and the Missouri corporation had the right to permit its use by the Kansas corporation, as it doubtless intended when it sold the Kansas properties to the Kansas corporation; and the complainants had the right, and it was their duty to preserve it as a part of the trust estate essential to the operation of the trust property. The ordinance not having expired, the city of Wichita had no legal right to nullify its own ordinance or interfere with property being constructed and operated under its provisions.

But, if the court is in error on this point, the case may be rested on another ground with greater certainty. On the 23d of March, 1896, the city of Wichita by an ordinance granted the Kansas corporation the following franchise:

### Schedule C. Ordinance No. 1356.

An Ordinance Granting to the Missouri & Kansas Telephone Company, Its Successors and Assigns, the Right to Build, Operate and Maintain Telephone Lines in the City of Wichita, Sedgwick County, State of Kansas.

Be it ordained by the mayor and councilmen of the city of Wichita:

Section 1. That the right of way be, and the same is hereby, granted the Missouri & Kansas Telephone Company, its successors and assigns, to locate, construct and maintain telephone lines, and all wires, poles, mains, viaducts, gutters and manholes along, in, through, under and across any public street, avenue, alley, or bridge and viaduct in the said city, for the purpose of operating a telephone exchange and telephone lines, and offering and rendering the usual facilities and service by such telephone lines and telephone exchanges afforded: provided, said lines, poles and wires be so placed with reference to streets, avenues, alleys, sewers, viaducts, bridges and other electric lines so as to occasion no unreasonable inconvenience or obstruction. All such locations are to be made subject to the reasonable direction and approval of the city engineer.

Sec. 2. Wherever the poles of said company shall be set in an alley, they shall be placed as near the sides of said alley as practicable, and in such manner as to occasion no unreasonable inconvenience to the public, or adjoining property owners. Wherever such poles are located on streets or avenues, they shall be placed in all cases when practicable, on the outside edge of the sidewalk, immediately inside of the curb stone, and on the line dividing the lots one from the other; and in no case shall they be placed so as to interfere with any sewer, or any part of the drainage system of the city.

Sec. 3. No poles or wire of any electric light, telegraph or electric motor company, or any other electric plant, shall be located on the same side of the street, avenue or alley where the said Missouri & Kansas Telephone Company has placed a line of poles or other fixtures for carrying its wires. This provision shall not affect the rights now enjoyed by any company now located in this city. This shall not apply to the city fire alarm telegraph lines being owned and operated exclusively by the city for fire purposes. Wherever the lines of electric light, telegraph or electric motor companies or other electric plant, save as above excepted, shall be strung at an angle across the wires of the Missouri & Kansas Telephone Company, where a crossing is necessary, they shall not, in any case be allowed to approach the wires of the said Missouri & Kansas Telephone Company nearer than three (3) feet. The said Missouri & Kansas Telephone Company shall not place its wires nearer than three (3) feet from the wires of any other company, as above described. In case of the violation of the requirements of this section, it shall be the duty of the fire marshal to notify the offending party or company

to remove its wires, poles or other fixtures so erected in violation hereof within three (3) days of said notification, and, on failure to comply with such notification, the fire marshal shall forthwith remove such wires, at the expense of the offending company or party.

Sec. 4. The rights and privileges hereby granted to the said company shall be for the period of five (5) years and until terminated by the resolution of the mayor and councilmen of the city of Wichita, upon six (6) months' notice, to be served upon the managing agent of said company at Wichita; said notice to be served at any time after six (6) months immediately preceding the expiration of five (5) years from the acceptance of the provisions of this ordinance by said company.

Sec. 5. The said Missouri & Kansas Telephone Company shall furnish to the city of Wichita five telephones free of cost, and as many more telephones as the city shall need for fire and police and executive service of the city, at one-half the regular business rate; also to furnish the necessary wires and instruments put up in proper places and kept in condition for telephonic communication between each fire station, the residence of the fire marshal and the central telephone office, for the simultaneous transmission to each of fire alarms and fire department business only, for the sum of eighteen ($18) dollars per annum per station; these free and half rate services to be given during the term of five (5) years, in place and instead of any special license tax, unusual levy, and special assessment of any sort or description which the said city might otherwise demand, levy or collect. Said free and half rate telephones are to be located by resolution of the city council. Said Missouri & Kansas Telephone Company shall provide for the sole and exclusive use of the said city of Wichita, for fire alarm service, two (2) pegs on the upper arm of each of the company's poles in the said city, it being specially hereby agreed that such pegs or such poles shall be used for no private purposes or advantages than the above specified city fire alarm business, and the said city hereby reserves the right to use any of the poles of said company for fire alarm purposes.

Sec. 6. The Missouri & Kansas Telephone Company shall remove its wires after twenty-four (24) hours' notice on request of the fire marshal, to permit the moving of buildings along the streets, such removal of wires to be, in every instance, at the expense of the party for whose benefit or convenience such removal is made, such party to be determined and designated by the said fire marshal of the city.

Sec. 7. Any person who shall at any time carelessly or wilfully injure, damage or destroy or deface the structures or the property of the said Missouri & Kansas Telephone Company, its successors or assigns, located, constructed and operated for the purpose set forth in this ordinance, or who shall in any manner interrupt or interfere with such telephonic communication, or telephone plant or business, shall be deemed guilty of a misdemeanor, and shall be punished by a fine of not less than five (5) or more than fifty (50) dollars.

Sec. 8. The said Missouri & Kansas Telephone Company shall save the city of Wichita harmless from the costs, damages and expenses for the payment of which said city may become liable to any person or persons, or corporation, by reason of the granting of the said right of way to the Missouri & Kansas Telephone Company, or by reason of the construction or operation of the said company's lines, or by reason of the said company failing to conform to or comply with, the provisions and requirements of this ordinance: provided, always, that the Missouri & Kansas Telephone Company shall in no respect be held responsible for damages, expenses or other charges whatsoever, due for, or occasioned by the maintenance and operation of the said lines for electrical fire alarm service which may, by the said city, be constructed and operated on the said two (2) pegs on the upper arm of each pole belonging to the said company as aforesaid.

Sec. 9. All ordinances or parts of ordinances in conflict with this ordinance are hereby repealed.

Sec. 10. This ordinance shall take effect and be in force in the city of Wichita, Kansas, from and after its passage and publication in the official city paper, and on the acceptance of the said Missouri & Kansas Telephone

Company, said acceptance to be made in writing, within ten (10) days from
the passage hereof.                        City of Wichita, by L. M. Cox, Mayor.
   Passed the council March 23, 1896.
                                                           C. S. Smith, City Clerk.

It will be observed that by the fourth section of this ordinance the
city of Wichita reserved the right to terminate this ordinance by reso-
lution of its mayor and councilmen, at any time after five years from
its passage, "upon six months' notice, to be served upon the managing
agent of said company at Wichita," etc. The five years elapsed on
the 23d of March, 1901, and it might have been terminated at any
time thereafter by resolution of the mayor and councilmen, upon giv-
ing the required notice. The only steps taken by the mayor and coun-
cilmen of the city of Wichita to terminate this ordinance are disclosed
by the following proceedings of the city council of the city of Wichita:

### Schedule D.

#### Official Proceedings of the City Council, September 24, 1900.

"On motion Councilman Burton, clerk was instructed to notify the Mis-
souri Kansas Telephone Company when their present franchise would expire,
and that the city would require them to remove their wires and poles from
the streets at that time."
State of Kansas, County of Sedgwick, City of Wichita—ss.:
   I, Amos McClain, city clerk of the city of Wichita, hereby certify that the
above resolution is a true and correct copy of the original, as it appears in
the journal of the official proceedings of the Wichita city council.
                                                    Amos McClain, City Clerk.

This notice was served on the Kansas corporation twice, to wit,
on September 28, 1900, and on October 13, 1900, as shown by the
following extracts from the record:

### Schedule E.
                                                              Sept. 28, 1900.
   Mr. G. B. Meredith, Local Manager Mo. Kans. Tel. Co.—Dear Sir: At the
regular meeting of the city council held Sept. 24, 1900, I was instructed to
officially notify you that the Mo. Kans. Tel. Co.'s franchise would expire
April 1, 1901, and they would then be required to remove from the streets
and alleys all poles, wires, etc. The following is the portion of the official
record relating to and authorizing above notice:
   "On motion Councilman Burton, clerk was instructed to notify the Mo.
Kans. Tel. Co. when their present franchise would expire, and that the city
would require them to remove their wires and poles from the streets at that
time."
   Very respectfully,                             Amos McClain, City Clerk.
                              Schedule F.
                                                               Oct. 13, 1900.
   Mr. G. B. Meredith, Mgr. Mo. Kans. Tel. Co., City—Dear Sir: By direction
of the mayor and council of the city of Wichita, I hereby notify you that
the rights and privileges granted to your company by Ordinance No. 1356,
entitled "An ordinance granting to the Missouri Kansas Telephone Company,
its successors and assigns, the right to build, operate and maintain telephone
lines in the city of Wichita, Sedgwick county, state of Kansas," will terminate
on the 1st day of April, 1901, and that your company will be required to re-
move your wires and poles from the streets and alleys in said city at that
time. I enclose herewith a certified copy of the resolution adopted by the
city council at the session of September 24, 1900.
   Yours truly,                                   Amos McClain, City Clerk.

Did these proceedings terminate the ordinance? Clearly not. This ordinance could be terminated in one of two ways only: First, by the lapse of 20 years, as provided by law; second, in the manner provided by the ordinance itself. The 20 years have not elapsed, and will not expire until March 23, 1916. The action of the council of the city of Wichita, had on the 24th of September, 1900, hereinbefore copied in full, was not in any sense whatever such action as the ordinance itself required, nor was it tantamount thereto. Manifestly the action had was intended to terminate the ordinance; but the question is, what was done, not what was intended to be done? Was the action had the "resolution of the mayor and councilmen," terminating the ordinance? If so, when did the action had fix the period of its termination? The action had furnishes no answer. It simply instructed the clerk to notify the company when their present franchise would expire; but the franchise fixes no time for its expiration. The law fixed it at 20 years from its publication. What did the clerk do under this action of the council? He fixed the time for the expiration of the ordinance for April 1, 1901. Why did he fix that date? He says he was so instructed at a meeting of the city council held September 24, 1900. Who by? He does not say, and the record of the council does not show that any date was fixed for the expiration of the franchise. Can rights so important to the defendant as these be left to be destroyed by such proceedings, at total variance with the ordinance by which they were acquired? Can the mayor and councilmen of the city of Wichita abdicate their charter powers and duties by delegating them to the clerk of the city? These questions answer themselves. All the powers of the city are delegated to it through its charter and amendments thereto, and must be exercised by it in the way pointed out by law, and it can delegate no vestige of its discretionary or legislative power to any person for any purpose. These proceedings of the 24th of September, 1900, of the mayor and council of the city of Wichita, utterly failed to accomplish the object intended, and the ordinance of March 23, 1896, remains in full force and effect. I have not overlooked the subsequent proceedings of the council looking to the removal of the Kansas company's properties. They were not intended to repeal the ordinance referred to, but proceeded upon the theory that the ordinance was already repealed, and were intended to accomplish different results; but, if they had been so intended, they would not have accomplished that end. McQuiddy v. Branncock, 70 Mo. App. 535; Brock v. Luning, 89 Cal. 316, 26 Pac. 972; State v. Jersey City, 25 N. J. Law, 309; Foster v. City of Cape May (N. J. Sup.) 36 Atl. 1089; People v. McWethy (Ill.) 52 N. E. 479; State et al. v. Mayor and Aldermen of City of Paterson, 34 N. J. Law, 163; Blair et al. v. City of Waco, 75 Fed. 800, 21 C. C. A. 517.

In view of the conclusions reached as to the validity of the two ordinances already considered, I do not find it necessary to determine what rights, independent of the ordinances of the city of Wichita, the telephone companies organized under the laws of Kansas may have acquired by virtue of the laws for the organization of private corporations. It may be remarked, however, that long before the act approved March 6, 1885, found at page 151, c. 104, Laws Kan. 1885,

was enacted, this record shows that telephone companies had been organized under the general incorporation law of the state of Kansas, not only for the purpose of constructing and maintaining telephone lines, but also for the manufacture of telephone instruments, and one of these companies, at least, had constructed, maintained, and operated a telephonic exchange under an ordinance granted by the city of Wichita. It is true that no provision is made in the incorporation laws of Kansas for the incorporation, by name, of telephone companies, as will be found by an examination of section 1207 of the General Statutes of Kansas of 1899. But that section does provide for the incorporation of companies for the construction and maintenance of a telegraph line, and also for the transaction of any manufacturing, mining, mechanical, or chemical business; and by section 1301 of the General Statutes of Kansas of 1899, it is provided that:

"Corporations created for the purposes of constructing and maintaining magnetic telegraph lines are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this state, in such manner as to not incommode the public in the use of such roads, streets and waters."

This section, as will be seen, expressly confers upon telegraph lines the right to occupy the streets of cities. This law was enacted in 1868. No other statutes of Kansas than those quoted have been cited or found under which it is claimed telephone companies may be organized. Many cases have been cited from different states where it has been held that a telegraph includes a telephone; and by the twenty-second paragraph of section 710 of the General Statutes of Kansas of 1899, relating to the powers of cities of the first class, it is provided:

"The mayor and council shall have power * * * to grant the right of way for the erection of telegraph, electric light or telephone poles and wires along and upon any of the streets, alleys or ways of the city, and change, modify and regulate the same."

And this act was passed on the 6th of March, 1881 (Laws Kan. 1881, p. 84, c. 37), so that long before the passage of the act of March 6, 1885 (Laws Kan. 1885, p. 151, c. 104), providing for the formation of telephone companies, the Legislature of Kansas had, in its general law governing cities of the first class, conferred the power on cities to grant the right of way for telephone poles and wires along any of the streets, alleys, and ways of the city.

In view of the fact that a telegraph has been held to embrace a telephone (Iowa Union Telephone Co. v. Board of Equalization of the City of Oskaloosa, 67 Iowa, 250, 25 N. W. 155; Wis. Cen. Tel. Co. v. City of Oskosh, 62 Wis. 32, 21 N. W. 828; C. P. Tel. Co. v. B. & O. Tel. Co., 66 Md. 399, 410, 7 Atl. 809, 59 Am. Rep. 167; People's Tel. & Tel. Co. v. Prest. B. & D. Turnpike Co. [Pa.] 49 Atl. 284; Hudson River Tel. Co. v. Watervliet Turnpike & Roadway Co., 135 N. Y. 393, 32 N. E. 148, 17 L. R. A. 674, 31 Am. St. Rep. 838; Atty. Gen. v. Edison Tel. Co. of London, 6 L. R. Q. B. Div. 244; N. W. Tel. Ex. Co. v. City of Minneapolis [Minn.] 86 N. W. 69, 53 L. R. A. 175; State [Duke, Prosecutor] v. Cent. N. J. Tel. Co., 53 N. J. Law, 341, 21 Atl. 460, 11 L. R. A. 664), it may well be ques-

tioned as to whether it was the intention of the Legislature of Kansas, when it conferred the power on cities to grant the right of way for the erection of telegraph, electric light, or telephone posts or wires along and upon any of the streets, alleys, or ways of the city, to withdraw from telegraph companies the power conferred in 1868 under section 1301 of the General Statutes of Kansas of 1899. Manifestly, if the contention of defendant's counsel as to the effect of the proper construction to place upon the twenty-second paragraph of section 710 is correct (that is to say, that before a telegraph or telephone company can gain any right to occupy the streets, alleys, and ways of the city, it must procure a franchise from the city for that purpose), then that section nullifies section 1301, by which the power is conferred upon telegraph companies directly to occupy the streets of cities in Kansas. Is it not the more reasonable construction of paragraph 22 of section 710 to hold that it only confers the power upon cities to enact ordinances, among other things, governing and regulating the right of way upon which telegraph, electric light, and telephone posts and wires may be placed, and to change and modify the same, than to hold that this section, applicable alone to cities, repeals the general law conferring rights directly upon corporations organized under the general incorporation law of the state? Is it not the duty of the court to construe these two statutes so as to permit both of them to stand; and can they be construed so as to permit them both to stand, and have full force and effect, if the contention of defendant's counsel is sound? I simply call attention to this phase of the case, though, as already stated, I do not find myself called upon to determine the questions referred to in this case, nor do I find it necessary for the solution of this case to pass upon the question as to whether section 2 of the act of March 6, 1885, is constitutional or not, although many authorities are cited to sustain the constitutionality of the act. Tabor v. Commercial National Bank, 62 Fed. 383, 10 C. C. A. 429; Travelers' Ins. Co. v. Township of Oswego, 59 Fed. 64, 65, 7 C. C. A. 669; Heilman et al. v. Ludington et al. (Colo. Sup.) 57 Pac. 1075; Clemmensen v. Peterson (Or.) 56 Pac. 1015; Ex parte Liddell (Cal.) 29 Pac. 251; Pinkerton v. Penn. Traction Co. (Pa.) 44 Atl. 284; State ex rel. Walter v. Town of Union, 33 N. J. Law, 352; Coward v. Mayor, etc., of N. Plainfield (N. J. Sup.) 42 Atl. 805; Quinn v. Fidelity Ben. Ass'n, 100 Pa. 382; State ex rel. v. Cross, 38 Kan. 699, 17 Pac. 190; State v. S. Barrett, 27 Kan. 213, 218, and cases cited; State v. Cassidy, 22 Minn. 312, 322, 326, 21 Am. Rep. 765, and cases cited.

The Kansas corporation now owning the telephone properties in the city of Wichita was organized under the laws of Kansas, and articles of association were long since issued to it, and ordinances, as has been stated, have been passed by the city of Wichita granting it certain franchises, which have not expired. It is not within the power of the city of Wichita to question the validity of the incorporation of this company. That can only be done by a proper proceeding on the part of the state of Kansas. For all the purposes of this case the Kansas corporation must be treated as duly organized under the laws of Kansas.

This brings me to the consideration of the question as to whether the facts stated in the complainants' bill justify the injunctive relief sought. The record discloses the fact that the bill of complaint in this case was filed on the 23d of August, 1902; that on the 24th of September, 1900, the clerk of the city of Wichita had been instructed by its council to notify the defendant when its franchise would expire, and after that it would be required to move its wires and poles from the streets of the city; and that the clerk, in pursuance of the directions given, served the notice upon the defendant that the franchise would expire on the 1st of April, 1901. On the 2d day of January, 1902, the mayor and council of the city of Wichita passed the following resolution, a certified copy of which was served upon the manager of the Kansas corporation at Wichita:

### Exhibit O.

Whereas, the right of way granted by the city of Wichita to the Missouri & Kansas Telephone Company, its successors and assigns, to construct and maintain telephone lines and all wires, poles, mains, viaducts, gutters, and manholes along, through, under, and across any public street, avenue, alley, or bridge and viaduct in said city, as said rights and privileges were defined and granted by Ordinance No. 1356 of the city of Wichita, passed March 23, 1896, and all rights of said company under said ordinance have been duly terminated as provided by the terms of said ordinance; and

Whereas, the said Missouri & Kansas Telephone Company have now no right or authority to maintain and operate its wires, poles, cables, and electrical appliances along, in, over, through, under, or across the public streets, alleys, and public grounds of said city; and

Whereas, the Missouri & Kansas Telephone Company is now occupying the public streets and alleys of said city with its wires, poles, and cables, and is threatening to extend its telephone system by erecting additional poles and stringing its wires and cables over and along the streets, alleys, and public places in said city, without authority; and said poles and wires are a hindrance to the fire department of said city and a menace to the safety of the lives and property of the citizens of said city:

Therefore, be it resolved by the mayor and councilmen of the city of Wichita that the city clerk notify said company in writing that it is forbidden by said city to erect any additional poles or to string any additional wires or cables along, over, or through the streets, alleys, or public places in said city, and unless said company shall apply for and obtain from said city the right to maintain its said wires, poles, fixtures, and electrical appliances along the streets, alleys, and public places of said city, upon such terms and conditions as the mayor and councilmen may by ordinance require and impose on or before the first day of September, 1902, that the chief of police, fire marshal, and city electrician be, and they are hereby, directed to remove all the poles, wires, fixtures, and electrical appliances of the said Missouri & Kansas Telephone Company from the streets and public places in said city; that the city attorney and judiciary committee prepare and submit to the council at its next meeting the necessary ordinance or ordinances for carrying the provisions of this resolution into effect, with suitable penalties for the violation thereof.

### Exhibit P.

January 4, 1902.

Mr. L. F. Duggan, Dist. Mgr. Mo. & Kans. Telephone Co., City—Dear Sir: I am directed by the mayor and city council of the city of Wichita, per resolution adopted at a special meeting held January 2, 1902, to inform you that the Missouri & Kansas Telephone Company is forbidden by said city to erect any additional poles or string any additional wires or cables. A certified copy of the above resolution as adopted is herewith inclosed.

Yours truly,                              J. L. Leland, City Clerk.

On the 30th of December, 1901, the mayor of the city of Wichita addressed the following communication to the chief of police:

Exhibit N.

Wichita, Kansas, Dec. 31, 1901.

To the Chief of Police—Sir: I desire to call your attention to the ordinances prohibiting the setting of poles and stringing of wires, or electrical construction of any kind, in the streets and alleys without a franchise granted by ordinance permitting such work under certain restrictions or a written permit from the proper city authority. This and former city councils have repeatedly refused to grant the right to parties seeking telephone franchises to erect poles and string wires in the streets and alleys in the heart of the city. In utter disregard of the well-known wishes of this and former city administrations, and, as I believe, contrary to the wishes of a large majority of our citizens, the Missouri & Kansas Telephone Company have advertised that they would do a large amount of such construction, and I am informed are now at work setting poles and stringing wires in the business district. When first advised of this fact, I caused the city engineer to serve notice upon said company that such construction must cease until they had received the proper and legal authority to do such work, which notice they have wholly ignored. Some months ago a citizen of a neighboring town was granted by the city council the right to build an independent telephone toll line into the city of Wichita, following certain streets. This party is a competitor of the Missouri & Kansas Telephone Company. In building his line, he got a portion of it on the wrong street, was promptly arrested, fined $25 and costs, and compelled to tear down his line. The Missouri & Kansas Telephone Company, or any one else who violates the city ordinances in this regard, are entitled and should not receive any better treatment. You are directed to diligently keep track of all such construction, and promptly arrest any one engaged therein, and who have not obtained the proper and legal authority to do such work, or who attempt to do work of that character without obeying literally the restrictions placed upon them by ordinance. You are to be guided by the advice of the city attorney as to the city's rights in this matter. The rapid increase of poles and wires in the streets and alleys are a menace to the city on account of fire, especially in the business portion, and in the residence portion are an annoyance to our citizens on account of the ruthless cutting of shade trees to make room for them, and are generally a public nuisance, which you are directed to abate to the fullest extent authorized by the city ordinances.

B. F. McLean, Mayor.

On the 8th of January, 1902, the city of Wichita passed the following ordinance:

Exhibit Q.  Ordinance No. 1872.

An Ordinance Prohibiting the Erecting and Maintenance of Telephone Poles, in the Streets and Alleys of the City of Wichita, Unless the Owners or Users Thereof Shall Have First Obtained the Privilege to Erect and Maintain Such Poles from the Mayor and Councilmen of said City, and Providing Penalties for the Violation Thereof.

Be it ordained by the mayor and councilmen of the city of Wichita:

Section 1. That it is hereby declared to be unlawful for any person, firm or corporation to erect any pole or poles for the support of telephone wires in any public street or alley, in the city of Wichita, unless the owners or users of such pole shall first obtain from the mayor and councilmen of said city, the privilege of erecting such pole or poles. Any person, firm, or corporation violating any of the provisions of this section, shall upon conviction be fined in any sum not more than $100.00.

Sec. 2. That no person, firm or corporation shall after the first day of September, 1902, maintain or use any pole, theretofore erected for the support of telephone wires on any street or alley, in said city, unless the owners or users of such pole shall have on or before said date obtained from the mayor and councilmen of said city the right and privilege of erecting and main-

taining poles for telephone purposes in accordance with the condition of this ordinance and such other terms and conditions as the mayor and councilmen may impose. Any person, firm or corporation violating any of the provisions of this section shall upon conviction be fined in any sum not more than $100.00.

Sec. 3. Any person, firm or corporation owning any telephone pole, now erected in any street or alley of said city, failing to obtain the privilege mentioned in section 2 of this ordinance, shall immediately after the first day of September, 1902, remove all such poles from the streets and alleys of said city and restore said streets and alleys to their former condition. Any person, firm or corporation violating any provision of this section shall upon conviction be fined in any sum not more than $100.00 for each pole so allowed to remain.

Sec. 4. This ordinance shall take effect and be in force from and after its publication in the Wichita Daily Eagle.

Approved January 8, 1902.                                        B. F. McLean.

Attest: J. L. Leland, City Clerk.

Indorsed: "No. 22,384.    The City of Wichita v. Mo. & Kans. Tel. Co. et al."

Under and in pursuance of these ordinances and proceedings upon the part of the city, the manager and employés of the Kansas corporation were arrested a number of times for erecting extensions of their telephone system in the city of Wichita, and were tried and fined in the city courts, and the poles erected for extensions were cut down in pursuance of said ordinances. Those proceedings were all had by the city upon the theory that the franchise of the Missouri & Kansas Telephone Company had expired, and that they had no right or authority to remain longer upon the streets of the city. It is contended now that it was not the object or purpose of the city to interfere with the plant, as established, at the time these ordinances were passed and proceedings had, but that the object was only to prevent extensions of the plant, and to lay the foundation for a proceeding in the courts of the state to oust the telephone company from the city. What the city intended to do must be determined from the ordinance. It cannot be heard to say that it solemnly enacted an ordinance which it did not intend in good faith to enforce, and in the mode and manner provided by the ordinance. The complainants had the right to act upon the theory that the city intended to do what it had solemnly declared by ordinance it would do, and not to wait until the threatened wrong was done. It had the legal right to invoke the aid of the courts for protection against the wrong. In State (Danforth, Prosecutor) v. Mayor and Aldermen of the City of Paterson, 34 N. J. Law, 163, the court said (on page 171):

"It is not necessary for a person to wait until his liability is fixed before he can have redress. It is enough that he may be affected by an illegal ordinance or resolution to entitle him to a hearing before any attempt has been made to enforce it. It is reasonable to suppose that what its board of aldermen have resolved shall be done, and what they have appointed commissioners to do will be done."

It also appears from the record that, prior to the time that these extensions were made, applications had been made by the Kansas corporation to the city council for instructions and advice as to where and how their poles should be placed, and action by the city council upon said petition was refused and denied, on the theory, of course, that its franchise had expired, and it had no right to occupy the streets at all. Indeed, on the trial of the case it was admitted in argu-

ment that the reason why these various steps had been taken by the city to oust the Kansas corporation, was because it had refused to accept such a franchise as in the opinion of the city of Wichita the city was justly entitled to, and, upon refusing such franchise, the city had granted franchise to another person, with the purpose in view of excluding the Kansas corporation from the city, so that only one telephone system would exist there. In the view taken by the court it matters but little what the purpose and object of the city was in the passage of the ordinance and in taking the other steps above recited. The Kansas corporation was doing business in Wichita under and by virtue of the unexpired ordinances of that city, and therefore the proceedings had by the city to oust or expel it from the city were unauthorized and illegal. By the very terms of section 1 of the ordinance of March 23, 1896, it was provided that:

"The right of way be, and the same is hereby, granted to the Missouri & Kansas Telephone Company, its successors and assigns, to locate, construct and maintain telephone lines, and all wires, poles, mains, viaducts, gutters and manholes along, in, through, under and across any public street, avenue, alley, or bridge and viaduct in the said city, for the purpose of operating a telephone exchange and telephone lines, and offering and rendering the usual facilities and service by such telephone lines and telephone exchanges afforded: provided, said lines, poles and wires be so placed with reference to streets, avenues, alleys, sewers, viaducts, bridges and other electric lines so as to occasion no unreasonable inconvenience or obstruction. All such erections are to be made subject to reasonable regulations and approval of the city engineer."

And the second section provided how the poles should be placed in the alleys and streets or sidewalks, and how they should be placed with reference to drainage and the sewer system. It is not contended that the action of the city in interfering with the extensions, and laying the foundation for ousting or rejecting the Missouri & Kansas corporation from its city, was by reason of any violation of this franchise as to the mode and manner and place where the poles were set or lines were stretched; but its whole contention is that the franchise of that company had expired, and it had no right to occupy the streets at all. In this the city was manifestly wrong. It requires no argument to show that the destruction of the telephone properties of the Kansas corporation at Wichita would not only derange the business and impair the usefulness of the properties of the Kansas corporation, in Kansas, but would greatly imperil the value of the whole security covered by the deed of trust.

It is useless to go further into detail. This opinion has already grown to considerable length. It is sufficient to say that whatever rights the Kansas company acquired under and by virtue of this ordinance were covered by the deed of trust, and that it was the duty of the trustees to preserve the benefits of such ordinance as a part of the trust estate, and that the city, in the proceedings to which I have referred, was not only violating the terms of this ordinance, but destroying and interfering with the properties which were part of the trust estate. In the opinion of the court this action upon the part of the city was illegal, and inflicted an injury upon the trust property for which no action at law would afford an ample remedy, and therefore the injunction should be granted.